Frederick J. ACOSTA, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted April 14, 1980.

Decided June 16, 1980.

John M. Amalfitano (argued), Wilmington, for defendant-appellant.

John T. Gandolfo (argued), Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before DUFFY, McNEILLY and QUILLEN, JJ.

QUILLEN, Justice:

We state the facts with heavy reliance on the statement of facts found in the defendant's brief, which statement has also been basically adopted by the State.

The defendant was convicted on four counts of Rape Second Degree (two counts based on cunnilingus and two counts based on fellatio) in violation of 11 *Del.C.* § 763. That section provides:

"A male is guilty of rape in the second degree when he intentionally engages in sexual intercourse with a female without her consent."

The applicable definitional sections of the Delaware Code pertinent to the above are 11 *Del.C.* § 767(3) and 11 *Del.C.* § 773(b). 11 *Del.C.* § 767(3) provides:

"Sexual intercourse, deviate sexual intercourse or sexual contact is 'without consent' when:

\*   \*   \*   \*   \*   \*

"(3) The victim is less than 16 years old;"

11 *Del.C.* § 773(b) provides:

" 'Sexual intercourse' means any act of coitus between male and female and includes intercourse with the mouth or anus. It occurs upon any penetration, however slight. Emission is not required. For purposes of this chapter, sexual intercourse shall include any act of cunnilingus." [1]

Before trial, defendant moved to dismiss the charges against him claiming that the statute under which he was being prosecuted was sexually discriminatory and therefore unconstitutional as a violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution. The motion was denied.

Through the testimony of two female minors, aged eleven and twelve, there was evidence to show their participation in various "sex games" during visitations with their father during the summer of 1978. The testimony of the minors indicated, on a Saturday in July, 1978, defendant participated in one of these sexual encounters. Specifically the testimony was that defendant performed acts of cunnilingus upon both of the children. The two acts of cunnilingus were the basis of two of the Rape Second Degree convictions.

The remaining two counts of Rape Second Degree pertain to fellatio which defendant allegedly caused the two minors to perform on him. Evidence of the act of

---

**1.** One background matter should be preliminarily noted. The specific inclusion of cunnilingus within the definition of sexual intercourse was a reaction to a Superior Court ruling that nonconsensual cunnilingus did not constitute sexual intercourse for purposes of rape in the second degree. *State v. Doe*, Del.Super., 351 A.2d 84 (March 29, 1976); 60 *Del.Laws*, Ch. 416 (formerly House Bill 991, 128th General Assembly) (signed by the Governor May 22, 1976).

fellatio was submitted indirectly. The State produced evidence of the act of fellatio through an officer of the New Castle County Police and the stepfather of the children. Testimony was supplied via 11 *Del.C.* § 3507 which permits out-of-court statements of a witness to be used as affirmative evidence at trial. The witnesses testified that in late August, 1978, the children told them that they had to perform fellatio on the defendant. While the testimony of the children was not always clear, there is testimony by the two girls at trial that they did not perform fellatio on the defendant.

The State did not charge that force was used in the sexual encounters. The prosecution alleged that the girls were under 16 years of age and therefore legally incapable of giving their consent to the sex acts.

At the close of the State's case, defendant moved for a judgment of acquittal on the two rape charges pertaining to the alleged fellatio. It was defendant's position that, in light of the fact that the two alleged victims of the crime specifically denied the occurrence of the event—witnesses who were clearly cooperative, non-hostile, non-turncoat prosecution witnesses—a prima facie case of proof beyond a reasonable doubt had not been established by the State. The Court did not rule on defendant's motion at that time but reserved decision. Upon renewal of defendant's motion at the close of the defense's case, the motion was denied.

Defendant was found guilty of all charges. The sentence included five years imprisonment per charge with all four five year terms running consecutively.

The two issues on appeal arise from the denial of the pretrial motion to dismiss all charges because the statute is sexually discriminatory and the denial of the motion for a judgment of acquittal on the two rape charges pertaining to fellatio due to insufficient evidence.

The statute here, as the statutes in the recent case of *United States v. Hicks*, 9th Cir., 625 F.2d 216 (1980), 48 Law Week 2748 (April 16, 1980), appears to assign the roles of victim and criminal on the basis of gender.[2] "To withstand constitutional challenge, . . . classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397, 407 (1976), reh. den. 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977).

There is developing some federal law which relates to the current appeal. In the *Hicks* case, *supra*, the Ninth Circuit held that the government's failure to produce evidence sufficient to support its contention that gender-based classifications of federal criminal "carnal knowledge" statutes have substantial relationship to asserted objectives of preventing unwanted pregnancy and physical injury to young females requires dismissal, on equal protection grounds, of indictments under those statutes. 625 F.2d 216. Similarly, two First Circuit cases seem to turn on the government's establishment by substantial legislative, statistical and medical evidence of asserted statutory objectives. See *Rundlett v. Oliver*, 1st Cir., 607 F.2d 495 (1979) and *Meloon v. Helgemoe*, 1st Cir., 564 F.2d 602 (1977), cert. den. 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978). With due deference to these recent federal cases, our approach is somewhat different in this case.

■ First, we note our Superior Court has already considered this question and declined to follow the *Meloon* case, finding it "placed an undue burden on the State" and "required the legislature to build into the legislation a mathematical precision not practicable in a rape statute." *State v.*

---

2. 11 *Del.C.* § 772(c) does say "[u]nless a contrary meaning is clearly required, the male pronoun shall be deemed to refer to both male and female." But the commentary indicates that "a woman would not ordinarily be guilty of rape" although she could be guilty of rape as an accomplice. Delaware Criminal Code with Commentary 1973, pp. 221–222. We do not find it necessary to attempt to definitively settle all of the possible factual variations in this case.

*Brothers*, Del.Super., 384 A.2d 402, 406 (1978). We find the traditional view set forth by Judge Christie in that opinion commendable even under the "middle tier" approach now being applied to gender based legislation facing equal protection attack. Moreover, the fact that the statute makes only men criminals for committing the act of nonconsensual fellatio upon a female victim is simply a recognition of physiological realities.

Second, even assuming that certain alleged objectives, such as protection of young females, clearly an objective of 60 *Del.Laws*, Ch. 416 as shown by the synopsis to House Bill 991, require an evidentiary record, we do not think the risk of pregnancy does. Clearly, as Judge Christie indicated in the *Brothers* case, the interests of society and the victim extend to protection against unwanted pregnancy. Moreover, it is hardly an answer to argue, as defendant urges here, that pregnancy does not arise from cunnilingus or fellatio. Indeed, this train of thought was carried to an extreme in *Meloon* where the Court suggested a rape statute with "penetration, however slight" and "emission . . . not required" provisions somehow negatived a pregnancy prevention purpose. See *Meloon v. Helgemoe, supra*, 564 F.2d at 607. Such technical analysis attributes to sexual acts an analytic rationalism that is not warranted by human experience. A female under attack by a nonconsensual act of cunnilingus or fellatio is under a greater risk of being subjected to nonconsensual conventional sexual intercourse and unwanted pregnancy than one who is not under such attack. We find that conclusion alone supports a classification by gender under the *Craig v. Boren* test. And we do not think that conclusion has to be established by empirical evidence.

Third, we think that the prompt legislative clarification of the definition of "sexual intercourse" found in 11 *Del.C.* § 773(b) to include cunnilingus, as recited in the first footnote herein, would necessarily effect the construction given the definition of "deviate sexual intercourse" in 11 *Del.C.* § 773(c). Indeed, the original definition of "deviate sexual intercourse", "intercourse

between persons of the same sex, including intercourse with the mouth or anus", suggests that cunnilingus was always intended to be included within the definition of "sexual intercourse" and "deviate sexual intercourse", contrary to the conclusion reached in *State v. Doe, supra*. In that light it is reasonable to look at the 1976 amendment as a restatement of legislative intent. Thus, if a woman performed the same acts of cunnilingus on these two minors as the defendant or if she allowed such acts to be performed by children upon her, she would be guilty of sodomy in the first degree, a class B felony, a crime of comparable severity with rape in the second degree. And, even under the most liberal defense construction of the statutory scheme, whatever the sexual makeup of the participants, sexual assault, a class A misdemeanor, would be available. 11 *Del.C.* § 761. We do not find the definitional differences under the statute rise to unconstitutional discrimination.

Finally, we think some common sense has to be applied in this situation. This is not a case where one sex only is denied a parental right over a child [compare *Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979)] or a case where one sex is being discriminated against by a State's drinking laws [*Craig v. Boren, supra*]. This is a case where a male adult, who claims constitutional protection, has been found guilty of sexually abusing female children. In another context the Supreme Court has said that "[i]t is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency, Inc. v. People of State of New York*, 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949). We do not think evolving concepts of sexual equality should impact constitutionally in such an abrupt and callous manner that the only remedy of the legalistic mind is to deny protection from sexual abuse to female children. We do not think that justice is that blind.

The second issue relates to the sufficiency of the evidence to support the

fellatio counts. Under a statute of this State, the out-of-court prior statement of a witness "may be used as affirmative evidence" whether or not consistent with the in-court testimony.[3] Thus, it is clear that the voluntary oral statements of the child victims to the police officer and to their stepfather are admissible under Delaware law. *Keys v. State*, Del.Supr., 337 A.2d 18 (1975); *Huggins v. State*, Del.Supr., 337 A.2d 28 (1975).

The defendant argues, however, that such oral statements, constituting the sole evidence of guilt of the fellatio offenses and inconsistent with in-court denials, are legally insufficient to justify a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), reh. den. 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). Our response to the defendant's argument is twofold.

■ Initially, since the oral statements are "affirmative evidence with substantive independent testimonial value", the jury has a right to rely on such evidence as much as any other evidence in the case. *Tyre v. State*, Del.Supr., 412 A.2d 326 (1980). And, since such statements are part of the affirmative evidence and since one can understand the deep embarrassment that young girls may have by being compelled to testify publicly as to their own active participation in sexual acts, we do not find convictions on such evidence to be unreasonable and constitutionally prohibited.

On the other hand, the defendant's point that this case is unusual is not without considerable merit. The State relied on the testimony of the two girls for two convictions and in effect said their in-court testimony as to the other two was not true. The witnesses involved are not the typical turncoat witnesses from the criminal population or from the defendant's circle of close contemporaries to which the statute was directed. *Johnson v. State*, Del.Supr., 338 A.2d 124, 127 (1975). The witnesses were not only witnesses but also the alleged victims of the very offenses they denied took place in their in-court testimony. As the Trial Judge noted at one point: "I don't ever remember the State insisting on going forward with the prosecution where the alleged victim herself has denied that the crime took place." But he concluded that "the statute is so worded that the State may form a prima facie case based on the impeachment of the State's own witness, and that it is a question of weight for the jury."

■ We agree with the conclusion of the Trial Judge but we remain troubled, particularly in this multiple count indictment and the atmosphere of boundless sexual escapades. Without in any way being critical of the conscientious performance of the Trial Judge, we find, in hindsight, that the unusual situation required unusual precaution to assist the jury in its trial function. The fact that the defendant participated in despicable conduct does not justify his conviction of a particular offense under the criminal burden of proof unless we are satisfied the jury fairly understood the particular evidence on the particular offense. Special precautionary instructions are regularly given in the case of felon witnesses, accomplice witnesses and others.[4] While the circumstances are obviously distinguishable, a fair trial required special advice to the jury as to the unusual care that must be taken before convicting a defendant of a

---

3. The statute, 11 *Del.C.* § 3507 reads in part:

"§ 3507. Use of prior statements as affirmative evidence.

"(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

"(b) The rule in subsection (a) of this section shall apply regardless of whether the witness's in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party."

4. The jury in this case was instructed that the defendant's prior record of felony convictions did not bar his testimony but evidence of such record could be considered in determining his credibility.

particular offense solely on the out-of-court statement of the victim inconsistent with her own in-court testimony.[5] Such an instruction was not given and in retrospect we find the failure to include such an instruction affected the substantial rights of the defendant. While the sufficiency of evidence issue was not argued before us in the context of the jury charge, and no exception was taken to the jury charge, the legal point raised by the motion for acquittal is necessarily related to the jury charge and in that sense it is included in the subject matter of the motion. We emphasize that this is a rare case, the victims denied that the crimes took place, and does not indicate any expansion of normal rules relating to instructional error.

As to the two convictions based on cunnilingus, we affirm the judgment of the Superior Court. As to the two convictions based on fellatio, we reverse and remand the case for a new trial.

---

**5.** We do not feel we, in our present appellate role, should attempt to formulate the precise instruction language. But the instruction could advise the jury that a statute permits evidence of such out-of-court statements, whether consistent or inconsistent with the in-court testimony, that caution must be exercised when a conflict exists, that the jury should be particularly careful when there is no evidence to corroborate the inconsistent out-of-court statement, but that the jury can convict on such statement if it is satisfied beyond a reasonable doubt it is true. Compare the standard accomplice testimony instruction in Delaware's Pattern Jury Instructions.