STATE of Utah, Plaintiff and Appellee,

v.

Maximillian Roberto SEALE, Defendant and Appellant.

No. 910010.

Supreme Court of Utah.

Feb. 24, 1993.

Rehearing Denied May 28, 1993.

---

1. Utah Code Ann. § 77–32–1(4).

lenges the convictions on several grounds, including ineffectiveness of counsel, improper admission of evidence, violation of his constitutional right to confrontation, and insufficiency of evidence. We affirm.

■ In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict. *State v. Hamilton,* 827 P.2d 232, 233 (Utah 1992); *State v. Gardner,* 789 P.2d 273, 285 (Utah 1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 965 (1990). We recite the facts accordingly. *Hamilton,* 827 P.2d at 234.

Alice Chapman and her three daughters, J.W., the oldest, P.W., and one younger girl, moved in with Seale at his Hurricane, Utah, home in the spring of 1987. At that time, all three girls were under the age of ten. The relationship between Chapman and Seale lasted until January of 1989, when Chapman and her daughters moved out.

In the summer of 1989, the three girls visited their father, who was divorced from Chapman and living in Jerome, Idaho. During their stay, J.W. and P.W. complained to Cheryl VanLeishout, their father's sister, that Seale had sexually molested them. VanLeishout took J.W. to be examined by Dr. Elizabeth Sugden, who found that J.W.'s vagina had physical manifestations consistent with sexual intercourse that could have occurred at any time between two weeks and several years prior to the examination. Two days later, the girls' father took J.W. and P.W. to see a social worker, Mary Riggs. Riggs interviewed the two girls separately in the presence of a female police officer. The interviews were videotaped.

Seale was arrested and ultimately charged with six counts of aggravated sexual abuse of a child, one count of forcible sodomy on a child, and one count of rape of a child.[1] The court appointed defense counsel, who later moved to commit Seale to the Utah State Hospital for a psychiatric evaluation. The court granted the motion. The evaluation showed that Seale had a

R. Paul Van Dam, Annina M. Mitchell, Salt Lake City, for plaintiff and appellee.

Gary W. Pendleton, St. George, for defendant and appellant.

ZIMMERMAN, Justice:

Maximillian Roberto Seale appeals his convictions of rape of a child, Utah Code Ann. § 76–5–402.1, and six counts of aggravated sexual abuse of a child, *id.* § 76–5–404.1, all first degree felonies. He chal-

---

1. The sodomy charge was later dismissed.

treatable psychotic disorder. The court found him incompetent to proceed and ordered that he be committed to the hospital for treatment. After six months of treatment, hospital personnel advised the court that Seale was competent to stand trial.

At trial, J.W. was the prosecution's first witness. She testified that Seale had sexually abused her on three occasions, each of which she explained in detail. The first incident took place when she was in the bathtub and Seale was washing her with a washcloth. She testified that Seale "put the washcloth in my bottom." The next incident occurred when J.W. and her two sisters were sleeping on the living room floor. J.W. testified that Seale came into the room and had intercourse with her. In the third incident, Seale told J.W. to go upstairs to an unfinished attic. There, Seale pulled down her panties and touched her "bottom" with his fingers. J.W. also testified that she told her mother about each incident after it occurred. She said that she was eleven years old when the incidents took place.

P.W. took the stand next. She testified that she had lived with Seale the previous year and knew the difference between a "good touch" and a "bad touch." When asked if she had ever been touched with a "bad touch," P.W. responded, "I don't know." She then proceeded to answer "I don't remember" to every question asked about whether Seale had touched her and whether she had told anyone that he had. P.W. testified that she was eleven years old, which would have made her ten when the incidents occurred.

At this point, the jury was excused so that the court could consider the admissibility of Mary Riggs' videotaped interview with P.W., which the defense had sought to exclude by a motion in limine prior to trial. The judge, who had viewed the videotape earlier, heard testimony from Riggs and then considered whether the videotape met the requirements of section 76–5–411 of the Code, Utah Code Ann. § 76–5–411, and rule 15.5 of the Utah Rules of Criminal Procedure, Utah R.Crim.P. 15.5. The judge made tentative findings, but decided to wait until he heard more evidence to make a final ruling.

Next the girls' father testified, the prosecutor read Dr. Sugden's testimony into evidence, and Cheryl VanLeishout recounted the events and conversations she had with J.W. and P.W. prior to trial. The prosecution then questioned Alice Chapman, the girls' mother. She testified that J.W. had told her about only one incident of abuse. According to Chapman, J.W. told her that Seale "did an Indian dance over her while she was asleep" and touched her breasts. However, Chapman stated that J.W. specifically denied being touched anywhere else. Chapman also testified that J.W. had told her that Seale washed her back in the bathtub, but that J.W. did not say anything about being touched on any other part of her body.

The prosecutor asked a series of questions challenging Chapman's credibility. Chapman testified that J.W. was currently living with the girls' father pursuant to a court order issued as a result of the divorce. Chapman admitted that although P.W. was still living with her, she was afraid her ex-husband would be awarded custody of P.W. as well. Chapman denied that she had encouraged P.W. "to forget things" in an effort to retain custody. Finally, she denied that her sister, Elizabeth Jones, had talked to her about Seale's possible abuse of the children or that she had asked Jones to lie on the stand.

Jones testified next. When the prosecutor asked her if the girls had said anything to her, defense counsel objected on hearsay grounds but was overruled on the basis that any statements elicited would be "prior consistent statements." Jones then testified that J.W. told her that Seale had "touched her bottom" and breasts and that J.W. had told her mother about it. On cross-examination by defense counsel, Jones said that P.W. also told her that Seale had "touched" P.W. on her "bottom." When asked about her conversations with Chapman, Jones said that she had told Chapman that Seale had molested the children, but that Chapman claimed that nothing had happened. Jones also testified that

Chapman called her the night before she was to testify and asked her not to say anything in court.

After Jones stepped down, the judge made certain findings and then ruled that the videotaped interview of P.W. was admissible under section 76–5–411 of the Code and Utah Rule of Criminal Procedure 15.5. The videotape subsequently was played for the jurors, who followed along with a written transcript. In the videotape, P.W. related four instances of sexual abuse. One occurred when she was in her bedroom putting on her nightgown. P.W. stated that Seale touched her "bottom" or "private spots," which she indicated as her genitals. Two similar incidents took place when she was taking a bath. The fourth incident occurred when everyone else in the house had gone to the store. P.W. said that Seale pushed her onto his bed and, not allowing her to leave, again fondled her. After the videotape was shown, the prosecution rested.

During Seale's case-in-chief, defense counsel first questioned Riggs about the videotaped interview with P.W., who was never recalled to the stand. After several other witnesses testified, the defense called Dr. Robert Howell of the Utah State Hospital.

Relying on psychiatric evaluations completed when Seale first entered the hospital, Dr. Howell testified that Seale was mentally ill at the time of the alleged abuse of J.W. and P.W. When asked if Seale was capable of forming the intent to commit the alleged offenses, Dr. Howell gave a contradictory response. At one point, he stated that there was a "real possibility" that Seale's actions were the result of mental illness. At another point, he testified that he did not mean to say that Seale was incapable of forming a conscious objective to carry out the acts. On cross-examination by the prosecution, Dr. Howell stated that he believed that Seale had used hallucinogenic drugs and that those types of

drugs could produce behavior similar to that manifested as the result of mental illness.

Seale also testified, flatly denying that he had used illegal drugs, that he was or had been mentally ill, and that he had molested the children. In rebuttal, the prosecutor called J.W., who testified that when she lived with Seale, he and her mother used marijuana on a weekly basis.

At the close of evidence, the jury was instructed that it could find Seale not guilty, not guilty by reason of insanity, guilty, or guilty and mentally ill for each of the seven counts submitted to them. During closing argument, defense counsel argued that Seale had been mentally ill during the incidents of abuse. The jury, however, returned verdicts of guilty on all counts. Later, with new counsel, Seale moved for a new trial, which was denied. He appealed, and we now consider his claims of error.

■ Seale first claims that he was deprived of the effective assistance of counsel guaranteed him by the Sixth Amendment to the United States Constitution because his trial counsel improperly asserted an insanity defense that prejudiced the jury against him. To establish that his trial counsel was ineffective under the Sixth Amendment, Seale must show (i) that his counsel's performance falls below the standard of reasonable professional assistance, and (ii) that but for counsel's deficient performance, there is a reasonable probability that the verdict would have been more favorable to him. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984); *State v. Verde*, 770 P.2d 116, 118–19, 124 n. 15 (Utah 1989); *State v. Lovell*, 758 P.2d 909, 913 (Utah 1988).

Seale argues that his trial counsel was ineffective because there was no basis for asserting an insanity defense.[2] He claims that throughout the pretrial proceedings,

---

**2.** The affirmative defense of insanity was abolished by chapter 49, section 1 of the Utah Insanity Defense Act. 1983 Utah Laws ch. 49, § 1 (codified as amended at Utah Code Ann. § 76–2–305). Section 76–2–305(1) still recognizes, however, that mental illness can provide a defense if, as a result of the mental illness, the defendant lacked the mental state required for the offense charged. Utah Code Ann. § 76–2–305(1).

the trial, and the posttrial proceedings, he steadfastly maintained his innocence and denied that he was mentally ill. He claims that his trial counsel nevertheless persisted in asserting an insanity defense. By calling Dr. Howell to the stand and asking him questions about Seale's sanity, Seale argues, his trial counsel undermined his credibility and opened the door to cross-examination about his drug abuse, all of which prejudiced the jury against him.

■ We find that Seale's trial counsel's decision to assert an insanity defense did not fall below the standard of reasonable professional assistance. It is well established that counsel will not be found ineffective when the actions complained of are the result of a "legitimate exercise of professional judgment in the choice of trial strategy." *State v. Bullock*, 791 P.2d 155, 160 (Utah 1989), *cert. denied*, 497 U.S. 1024, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990). In the instant case, we think that a reasonable attorney under the same circumstances could have asserted the insanity defense. We rely on the following facts.

After his arrest, the trial court determined on the basis of an extensive psychiatric evaluation that Seale was incompetent to stand trial. The diagnosis was a serious mental illness in the form of a schizophrenic disorder with periods of manic depression. Subsequently, he was committed to a hospital for treatment, and after six months of therapy, including the use of mood-stabilizing and antipsychotic drugs, he was determined to be competent to stand trial. In a report to the court, a copy of which was sent to Seale's trial counsel, a hospital psychologist and a doctor opined that Seale had been mentally ill during the time the alleged abuse occurred. These facts provide a sufficient basis from which a reasonable attorney could choose to assert an insanity defense on behalf of his or her client.

Thus, it is reasonable to conclude that Seale's trial counsel was pursuing a legitimate trial strategy in calling Dr. Howell to the stand and asking him questions about Seale's sanity. We also note that Dr. Howell's testimony provided sufficient evidence for the insanity defense to be submitted to the jury. Although Dr. Howell's testimony was contradictory, he did say at one point that there was a "real possibility" that Seale was mentally ill when the abuse took place. The jury was entitled to accept this statement and find that Seale was mentally ill at the time of the offense, *see State v. James*, 819 P.2d 781, 784 (Utah 1991), but obviously the jury did not. Seale's ineffectiveness claim fails.

■ Another ground for rejecting Seale's ineffectiveness claim rests on the fact that Seale entered an alternative plea of not guilty by reason of insanity. Apparently, Seale is now arguing that he disagreed with the plea at the time it was entered. We find this position to be untenable and reject his attempt to now claim ineffectiveness based upon his counsel's pursuit of that plea during trial. Seale has not shown, nor can we find, any indication in the record that he objected to the plea when it was made. We acknowledge that Seale initially told the trial judge that he wished to enter a not guilty plea and that it was his trial counsel who then requested an alternative plea of not guilty by reason of insanity. However, Seale did not object to the request, he signed the plea affidavit, and he initialed the paragraph requesting the alternative plea.[3] Under these circumstances, Seale cannot now challenge his counsel's actions in entering the plea of not guilty by reason of insanity and pursuing this theory at trial. *See State v. Medina*, 738 P.2d 1021, 1023 (Utah 1987).

Seale next claims that the trial judge erred by admitting the videotape of P.W.'s interview. Seale argues that the judge did not comply with section 76–5–411 of the Code or rule 15.5 of the Utah Rules of Criminal Procedure, both of which require the judge, under certain circumstances, to make specific findings prior to admitting out-of-court statements of a child sexual

---

**3.** Seale now argues that the written plea was impermissibly altered to include the insanity plea. The hearing transcript indicates, however, that the alteration was at least done with Seale's knowledge.

abuse victim. He further argues that the admission of the videotape violated his Sixth Amendment right to confront witnesses testifying against him.

Before reaching the merits of these arguments, we describe the findings made by the trial court in admitting the videotape. The trial judge made two sets of findings. Before making the first set, he viewed the videotape and heard testimony from Mary Riggs, the interviewer in the videotape, outside the presence of the jury. In these first findings, the judge noted that portions of P.W.'s videotaped testimony were consistent with other facts: P.W. realized that she lived in Hurricane for a period of time with Seale, her sisters, and her mother. The judge also stated:

> I see certain evidences of reliability in the testimony of [P.W.] as given on the videotape. For example, intrinsically, ... her story holds together. She tells the same story throughout the interview. She's consistent in her statements as to what happened and when. She does not appear to be subject to being led during the interview. In fact, the questions are always asked in multiple form, giving her an opportunity to correct the questioner or to make a choice of several options before she responds.
>
> There's no evidence in that videotape ... that she was under any pressure or being coached or led in any way as she made her statements. She doesn't appear to be under any duress. She appears to be responsive and not under any medication or in any way incapable of handling the interview and making responses to the questions. So intrinsically, ... the tape appears to be reliable. There are no fantastic statements such as we find in [*State v. Lenaburg*, 781 P.2d 432 (Utah 1989)].
>
> If that's what is required to allow one of these statements to come in, then ... it would appear to me that reliability has been established.
>
> But I think more than that is required. I think the court has to look at the extrinsic evidence of reliability as well.... [T]he only extrinsic evidence of reliability that I've seen is that [P.W.'s] statement

as to where she was living and who she was living with and the types of abuse that she claims to have suffered during that process or during that time are about the same as what [J.W.] has testified here that she went through.

> It seems to me there are a lot of other areas, though, that should be explored before I make a determination as to whether or not the burden of demonstrating the extrinsic reliability of those statements—before I'm required to make that determination.

The judge subsequently heard several more witnesses whose testimony carried over to the next day. Then he reconsidered the admissibility of the tape under section 76–5–411(1)(c) and rule 15.5. In his second set of findings, the judge stated:

> I've now heard testimony from several players in this drama, including the older child [J.W.], which tend to corroborate many of the statements made by [P.W.] in this videotape as to where she was living, who she was living with, and the general time frame. The fact that there was abuse going on in the home is also corroborative. [J.W.] has indicated she was being abused also.... Everything that is possible to corroborate from her statement, short of having an eyewitness to the sexual abuse, has been corroborated.
>
> I'm satisfied that the statement is reliable and trustworthy, and that the interests of justice would be served by allowing the jury to view the videotape. And therefore, I'm going to allow that to happen.
>
> Likewise, I make the finding under 76–5–411, that it is in the ... interests of justice that this tape be shown. I've ... considered the age and maturity of the child both at the time she made the statement and now, the nature and duration of the abuse as alleged by [P.W.] in this tape, and the relationship of her to the offender, as well as the reliability of the assertion that [P.W.] made. And considering all those things, ... it is in the ... interests of justice that the tape be shown to the jury.

These findings were made orally on the record.

Seale challenges the trial court's admission of the tape on essentially three grounds. First, he claims that the judge failed to follow section 76–5–411(1)(c) and rule 15.5(1)(g) by focusing on the lack of evidence showing unreliability rather than on the presence of evidence affirmatively showing reliability. Second, he claims that the judge improperly considered evidence corroborative of the charges against him in making the admissibility determination required by section 76–5–411(2). Seale argues that such consideration is contrary to our ruling in *State v. Matsamas*, 808 P.2d 1048, 1054 (Utah 1991), which precluded the consideration of this type of evidence. Finally, Seale claims that the judge's consideration of extrinsic evidence corroborative of the charges against him was also improper under the Confrontation Clause of the Sixth Amendment as interpreted in *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). He argues that under *Wright*, the reliability of an out-of-court statement made by a constitutionally unavailable declarant must be determined on the basis of the statement's inherent trustworthiness, not by extrinsic evidence corroborative of the charges. See *id.* at 821–22, 110 S.Ct. at 3150. We consider each of Seale's arguments in order.

We turn first to his claim that the trial court improperly considered the lack of evidence demonstrating that the out-of-court statement was unreliable, rather than the presence of evidence affirmatively demonstrating reliability, as required by section 76–5–411(2). As a threshold matter, we consider the State's contention that Seale waived this claim by not raising it at trial. *See* Utah R.Evid. 103(a)(1); *State v. Eldredge*, 773 P.2d 29, 34–35 (Utah), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989). Although Seale timely objected to the admission of the videotape, he claimed constitutional error rather than failure to comply with section 76–5–411 and rule 15.5. However, Seale did raise the issue in his motion for a new trial, and the court addressed the issue on the merits in denying the motion. Because the court considered the alleged error rather than finding it waived, Seale's right to assert the issue on appeal was resuscitated. *See State v. Johnson*, 821 P.2d 1150, 1161 (Utah 1991); *Matsamas*, 808 P.2d at 1053.

We begin our analysis of the merits of Seale's claim by considering the controlling statutory language. Section 76–5–411 states in pertinent part:

(1) Notwithstanding any rule of evidence, a child victim's out-of-court statement regarding sexual abuse of that child is admissible as evidence although it does not qualify under an existing hearsay exception, if:

. . .;

(c) the statement qualifies for admission under Rule 15.5(1), Utah Rules of Criminal Procedure.

(2) Prior to admission of any statement into evidence under this section, the judge shall determine whether the interest of justice will best be served by admission of that statement. In making this determination the judge shall consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, and the reliability of the assertion and of the child.

Utah Code Ann. § 76–5–411. Rule 15.5(1) states in pertinent part:

In any case concerning a charge of . . . a sexual offense against a child, the oral statement of a victim . . . may be recorded . . ., and upon motion and for good cause shown is admissible as evidence in any court proceeding regarding the offense if all of the following conditions are met:

. . .;

(g) the court views the recording before it is shown to the jury and determines that it is sufficiently reliable and trustworthy and that the interest of justice will best be served by admission of the statement into evidence. . . .

Utah R.Crim.P. 15.5(1). Because section 76–5–411 explicitly incorporates rule 15.-5(1), all the requirements of both provisions must be met for the proffered out-of-court

statement to be admitted. Although both provisions are couched in slightly different terms, both seek the same end—a determination that proffered out-of-court statements are sufficiently reliable and trustworthy to be admitted. *See State v. Nelson,* 725 P.2d 1353, 1355–56 n. 3 (Utah 1986).[4]

■ Section 76–5–411(2) lists seven specific factors courts are required to consider in making the admissibility determination: (1) the victim's age, (2) the victim's maturity, (3) the nature of the abuse, (4) the duration of the abuse, (5) the relationship of the victim to the offender, (6) the reliability of the statement sought to be admitted, and (7) the reliability of the child. In *Nelson,* we said that this list of factors is not exclusive; rather, it is "intended to prompt a *comprehensive inquiry into all the circumstances surrounding the child's out-of-court statement* in order to determine its reliability." 725 P.2d at 1356 n. 3 (emphasis added) (cited in *Matsamas,* 808 P.2d at 1051). Thus, even though a court "must enter findings and conclusions regarding each of the factors listed in the statute to explain its reasons for admitting or excluding the testimony," *id.,* the factors serve only as a starting point for a plenary review of the circumstances surrounding the making of the out-of-court statement. Consequently, trial courts should not consider the statutory factors mechanically, *see Matsamas,* 808 P.2d at 1052; *State v. Reiners,* 803 P.2d 1300, 1306–07 (Utah Ct.App.1990), and on review, the sufficiency of a trial court's findings should not hinge on mere technical adherence to the statutory factors.

■ With this in mind, we have reviewed the transcript of the trial court's consideration of the videotape, and we are satisfied that the trial court performed the comprehensive inquiry required by section 76–5–411(2) and *Nelson.* Although the trial court's stated findings regarding the

statutory factors were less complete than we would like, we cannot say that, considering the record as a whole, the trial judge erred in making the reliability determination. The record indicates that the judge carefully examined the circumstances in which the statement was made. After viewing the videotape and listening to the live testimony of both P.W. and the interviewer, the judge made tentative findings but declined to make a ruling until he heard several more witnesses. After further testimony, which continued into the next day, the judge made another set of findings and then ruled the tape admissible.

More importantly, we conclude that the trial court's recorded findings are sufficient under both section 76–5–411 and *Nelson.* All seven statutory factors are addressed in the court's findings. Although three of the factors—the age of the child, her relationship to Seale, and the exact nature and duration of the abuse—were addressed by merely quoting the statutory language regarding these factors, the facts pertinent to and supportive of the court's conclusion to admit the videotape are readily identifiable from the record. This is not a case like *Matsamas,* where the trial judge did not explicitly consider any independent evidence on the question of the admissibility of the out-of-court statement, but merely recited section 76–5–411's requirements and inappropriately relied on the ground that the statement might be helpful in determining what had occurred—a plainly tautological basis for finding it reliable. *See* 808 P.2d at 1052.

The most serious problem with the trial court's findings in the present case is that no explicit reference was made to P.W.'s maturity and reliability in general, although the judge did make detailed findings respecting her maturity and reliability as she appeared in the videotape. *See State v. Webb,* 779 P.2d 1108, 1113–14

---

**4.** In *Nelson,* we construed a previous version of section 76–5–411(2) that was amended to its present form in 1985. The previous and current versions are substantially the same. *Nelson,* 725 P.2d at 1355–56 & nn. 2–3. We note that since Seale's trial, this court and the court of appeals have further clarified the requirements in section 76–5–411 and rule 15.5(1) that trial judges must follow in making the findings required by those provisions. *See Matsamas,* 808 P.2d at 1051; *State v. Reiners,* 803 P.2d 1300, 1302 (Utah Ct.App.1990).

(Utah 1989) (opinion of Zimmerman, J.). However, the trial judge did have the opportunity to observe P.W.'s maturity and reliability when she testified on the stand, and he said that he took those factors into account in deciding to admit the videotape. In sum, we hold that the trial court did not err in finding the evidence admissible as required by section 76–5–411 and *Nelson*.[5]

Seale's next claim is that the judge improperly considered evidence corroborative of the charges against him in making the admissibility determination required by section 76–5–411(2). For this challenge, Seale relies primarily on our decision in *Matsamas*, 808 P.2d 1048.

In *Matsamas*, we construed the requirements of section 76–5–411 to be consistent with those established by the United States Supreme Court in *Wright*, 497 U.S. 805, 110 S.Ct. 3139. In *Wright*, the Court held that in determining the reliability of out-of-court hearsay statements, courts are prohibited under the Confrontation Clause of the Sixth Amendment from considering extrinsic evidence corroborative of the offense with which the defendant is charged. *Id.* at 822, 110 S.Ct. at 3150. Guided by this ruling, we held in *Matsamas* that under section 76–5–411(2), Utah courts may not consider extrinsic corroborative evidence in determining the admissibility of hearsay statements. 808 P.2d at 1054. Furthermore, because section 76–5–411(2) does not distinguish between cases where the victim is available to testify and those where the victim is not, we held that the bar to corroborating evidence must apply to both. *Id.* Although the impetus for our decision was a desire to construe section 76–5–411 as constitutional, we said that extrinsic corroborating evidence could not be considered under section 76–5–411(2) as a matter of statutory interpretation. *See id.*

▪▪▪ In the instant case, in determining the reliability of P.W.'s statements in the videotape, the trial judge considered

J.W.'s testimony that Seale sexually abused her during the same period and in the same manner as the prosecution claimed Seale had abused P.W. Plainly, this extrinsic evidence tends to corroborate Seale's sexual abuse of P.W. Therefore, we hold that the trial judge's ruling violates section 76–5–411(2), as interpreted in *Matsamas*. However, we find that the error is harmless. *See Hamilton*, 827 P.2d at 240; *State v. Larson*, 775 P.2d 415, 419 (Utah 1989); *Verde*, 770 P.2d at 120. For the reasons discussed below, we think that the trial judge would have admitted the videotape even if he had restricted his inquiry to the appropriate subject matter.

Before considering the extrinsic corroborating evidence, the trial judge considered the circumstances surrounding the making of the videotaped statements. The judge observed that P.W. told the same story throughout the interview and that she was consistent as to what happened and when. He also noted that she did not appear to be led during the interview and that the questions were always asked in multiple form, giving her the opportunity to correct the questioner or choose one of several options before responding. Finally, the judge observed that P.W. did not appear to be coached or under any duress during the interview and that she did not make any fantastic statements. Based upon these conclusions alone, the judge found that reliability had been established. While the trial court might have considered other relevant factors, such as the circumstances leading to the interview and whether P.W. had a motive to fabricate her story, we think the factors considered are sufficient under *Matsamas* and *Wright* to support the judge's finding. Consequently, we conclude that the judge's consideration of extrinsic corroborating evidence was harmless error.

▪▪▪ Seale's last attack on the admission of the videotape is based on the Confrontation Clause of the Sixth Amend-

---

**5.** Seale also argues that the trial court erred in not making written findings. *See State v. Van Matre*, 777 P.2d 459, 462 & n. 2 (Utah 1989). We see no reason why oral findings, duly re-

corded, do not satisfy that requirement. Consequently, the court did not err in making oral findings on the record.

ment.[6] Seale argues that he was not able to effectively cross-examine P.W. about the statements she made on the videotape and, therefore, that P.W. was constitutionally unavailable. *See Wright*, 497 U.S. at 814–16, 110 S.Ct. at 3146–47. Because P.W. was unavailable, he contends, *Wright* prohibits the trial court from considering extrinsic corroborative evidence in determining the reliability of P.W.'s videotaped statements. *See id.* at 821–22, 110 S.Ct. at 3150.

Seale advances two theories in arguing that P.W. was unavailable. First, he contends that P.W. was unavailable because of her "total failure of recollection at trial." Second, he quotes language in *Matsamas* in which we observed that *Wright* seemed to suggest that children, even if present at trial, might be found unavailable under the Sixth Amendment because of their lack of maturity. Neither argument is persuasive.

■ Seale's first theory is foreclosed by the United States Supreme Court's decision in *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). In that case, the Court considered whether an out-of-court statement identifying the defendant could be admitted consistent with the Confrontation Clause when memory loss prevented the declarant from testifying as to the basis for the identification. The Court held that the statement was admissible, reasoning, " 'The Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." ' " *Id.* at 559, 108 S.Ct. at 842 (emphasis in original) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987) (in turn quoting *Delaware v. Fernsterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985))). As we explained in *Nelson:* "The essence of the confrontation right is the opportunity to have an accusing witness in court and subject to cross-examina-

tion.... If the witness is physically present and subject to cross-examination ... these values would seem to be satisfied." 725 P.2d at 1356, *quoted in Van Matre*, 777 P.2d at 463; *accord Webb*, 779 P.2d at 1112–13 (opinion of Zimmerman, J.); *State v. Lenaburg*, 781 P.2d 432, 438 (Utah 1989) (Zimmerman, J., concurring, joined by Stewart, J.). Thus, Seale cannot rely on P.W.'s lack of memory as a basis for arguing that she was constitutionally unavailable.

■ Seale's second theory, that P.W. was unavailable because she was a child, also fails. Our comment in *Matsamas* concerning *Wright* was only an observation about where the Supreme Court may be heading in the Sixth Amendment area, not about where it has been. We made this observation because it supported our interpretation of section 76–5–411 as prohibiting the consideration of extrinsic corroborating evidence. We do not read *Wright* as holding that children, even if present, may be found to be constitutionally unavailable any more readily than adults. Moreover, we note that Seale's argument is at odds with this author's opinion in *Webb*, which said that a two-year-old child who could have come to trial must be considered available absent specific findings made by the trial court as to the child's inability to give competent testimony because of her immaturity. 779 P.2d at 1113–14 (opinion of Zimmerman, J.); *accord United States v. Spotted War Bonnet*, 933 F.2d 1471, 1474 (8th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1187, 117 L.Ed.2d 429 (1992); *see also Nelson*, 725 P.2d at 1356. In sum, because we find no merit to Seale's argument that P.W. was constitutionally unavailable, we conclude that Seale's right to confrontation was not violated when the court admitted P.W.'s out-of-court statements.

Seale next argues that Elizabeth Jones' testimony repeating statements J.W. and

---

6. Seale also claims that the admission of the videotaped statement violates his right to confrontation guaranteed by article 1, section 12 of the Utah Constitution. However, because he provides no separate argument or analysis un-

der that provision, we address his claim only under the Sixth Amendment. *See Webb,* 779 P.2d at 1111 n. 4 (opinion of Zimmerman, J.); *State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988).

P.W. made to her was improperly admitted under rule 801(d)(1)(B) of the Utah Rules of Evidence. Rule 801(d)(1)(B) allows an out-of-court statement to be admitted if (i) "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement," and (ii) the statement is "consistent with his [or her] testimony and offered to rebut an express or implied charge against him [or her] of recent fabrication or improper influence or motive." Utah R.Evid. 801(d)(1)(B).

The relevant facts follow: Under questioning by the prosecution, Chapman, the girls' mother, contradicted J.W.'s testimony that she had been molested by Seale on three different occasions, one involving intercourse, and that after each incident, she told her mother. Chapman testified that J.W. had reported to her only one instance of abuse, which involved the touching of J.W.'s breasts. After Chapman testified, the prosecution called Chapman's sister, Jones. When Jones was asked about J.W.'s statements to her regarding Seale, the defense objected on "the same bases as the objection yesterday regarding the social worker from Idaho." The objection the defense was referring to was a generic hearsay objection that had been made the previous day to testimony elicited from Mary Riggs. The prosecution responded that the state was seeking to admit the statements to "probe the credibility of Alice [Chapman]." The judge overruled the objection, ruling that "these statements are admissible as prior consistent statements, and therefore, ... admissible for the truth of the matter asserted, the credibility of the victims having been questioned." Jones then testified about a number of statements P.W. and J.W. made to her.

Seale argues that these statements were improperly admitted as prior consistent statements under rule 801(d)(1)(B) because the rule does not allow a party to introduce an out-of-court statement to rebut contradictory evidence that had been adduced by the same party.[7] Seale also argues that P.W.'s out-of-court statements should not have been admitted under the rule because they did not, at that point, contradict any testimony that P.W. had given. (The videotaped interview with P.W. had not yet been admitted.) [8]

Before reaching the merits of this claim, we consider the State's assertion that Seale waived his rule 801(d)(1)(B) claim because his objection was not sufficiently specific under rule 103(a)(1) of the Utah Rules of Evidence. Utah R.Evid. 103(a)(1); see Eldredge, 773 P.2d at 34–36. Although Seale's objection was vague, the judge clearly understood it when he ruled that the statement was admissible as a prior consistent statement. Rule 103(a)(1) allows trial counsel to forego explaining his or her grounds for objection if the specific ground is "apparent from the context," which it obviously must have been.

Returning to Seale's challenge, we find that even if the statements were improperly admitted, the error was harmless. See Hamilton, 827 P.2d at 240; Larson, 775 P.2d at 419; Verde, 770 P.2d at 120. In regard to Seale's convictions for rape and aggravated sexual abuse of J.W., we need not look any further than the evidence supporting those convictions to conclude that any error was harmless. The significance of J.W.'s statements recounted by Jones to the jury's verdict finding Seale guilty of raping and sexually abusing J.W.

---

7. Cheryl VanLeishout also testified as to statements J.W. and P.W. made to her regarding the abuse. On appeal, Seale does not challenge VanLeishout's testimony as to these statements. The jury was cautioned by the court that VanLeishout's testimony was being offered, not for the truth of the matter contained in the statements, but to show that complaints were made to her.

8. Seale further contends that the statements were not admissible under section 76–5–411 because the court failed to make the requisite admissibility determination. Seale did not ar-

gue that the statute superseded rule 801(d)(1)(B), but rather assumed that it was an alternative provision for admitting out-of-court statements. But see State v. Lamper, 779 P.2d 1125, 1129 (Utah 1989). Because we find that any error in admitting P.W.'s and J.W.'s statements to Jones under rule 801(d)(1)(B) was harmless, we do not need to reach the question whether section 76–5–411 supersedes or is an alternative to the rules of evidence or whether section 76–5–411 was violated in admitting those statements.

is minor compared with the substantial evidence supporting the verdict. *See Hamilton*, 827 P.2d at 240; *State v. Hackford*, 737 P.2d 200, 205–06 (Utah 1987). J.W. herself testified at length and in detail about the three incidents from which the charges against Seale arose. Dr. Sugden testified that J.W. showed physical signs of prior sexual intercourse. In light of this evidence, we cannot say that Jones' recount of J.W.'s statements to her, assuming it was error, prejudiced Seale with regard to his convictions for the rape and aggravated sexual abuse of J.W.

■ The potential for prejudice in regard to Seale's conviction for the aggravated sexual abuse of P.W. is more troublesome. The evidence supporting Seale's convictions for that offense is not as strong. However, it is at least sufficient to tilt our consideration of prejudice in the State's favor. We have held that the videotape of P.W.'s interview was properly before the jury. In the videotape, P.W. thoroughly described Seale's sexual abuse of her. On the stand, P.W. did not deny the truth of her videotaped statements; rather, she simply said that she could not remember whether she had been sexually abused. We do not rely, however, solely on the weight of this evidence to find no prejudice. We also rely on the lack of probative value of P.W.'s statements to Jones that Jones related during direct examination.

Our review of the record indicates two exchanges between Jones and counsel that may have been prejudicial. The first took place during the prosecution's direct examination of Jones. During this exchange, Jones made several statements with prejudicial potential. Some statements reflected P.W.'s fear of Seale. For example, Jones testified that P.W. told her that she was scared of Seale and did not want to return to Utah to live with him. These statements do not necessarily have anything to do with sexual abuse. We acknowledge that they may create the inference that sexual abuse was occurring, primarily because they were repeated in the context of a trial for sexual abuse, but we do not find the inference strong enough to prejudice the jury.

Jones also testified on direct examination that Seale had some physical contact with P.W.:

A. [P.W.] didn't say as much as [J.W.], but she said that he—she was scared of him, and that he'd also touched her. But she had said that—well, she didn't say as much that he'd touched her in the privates and the—well, the breasts, I guess you can call it. But they didn't have anything.

Q. [P.W.] said that?

A. Well, [J.W.] did too. But I don't know if you call that privates too. But—

Q. Did—Did [P.W.] say that as well?

A. Both of them did at that time. And that's when I told Alice that Max was hurting the girls....

....

Q. Did you tell Alice specifically what the girls had told you?

A. Yes. I told her that they said he'd touched them.

Again, although this line of questioning raises an inference of sexual abuse, it does not establish that any sexual abuse actually occurred. In addition, P.W. herself testified that Seale had helped her bathe by washing her back. Consequently, the statements that P.W. made to Jones reporting some physical conduct with Seale are largely consistent with P.W.'s own testimony.

The second exchange that may have prejudiced the jury occurred during defense counsel's cross-examination of Jones. Jones testified, inter alia, that P.W. "said that he'd touched her bottom." Unlike the other hearsay statements elicited by the prosecution during Jones' direct examination, we think that this testimony could have been prejudicial. However, in light of P.W.'s videotaped statements and the fact that P.W. did not deny on the stand that the abuse occurred, we cannot say that even if the statements adduced on cross had been excluded, our confidence in the jury's verdict finding Seale guilty of sexually abusing P.W. is undermined. *See Hamilton*, 827 P.2d at 240. Therefore, we hold that any error that may have occurred

as the result of these portions of Jones' testimony was harmless.

Seale's final argument is that the evidence is insufficient to support his convictions for the aggravated sexual abuse of P.W. He claims that the evidence is insufficient as a matter of Utah law and as a matter of due process under the Fourteenth Amendment of the federal Constitution. The State essentially concedes that the only affirmative evidence supporting Seale's convictions for the aggravated sexual abuse of P.W. is the videotape of P.W.'s interview. Thus, the only question before us is whether Seale can be convicted solely by a videotaped out-of-court statement consistent with Utah law and federal due process.

We conclude that under the narrow circumstances presented by this case, the videotaped interview is sufficient to sustain his convictions under both state law and the federal Constitution. We rely on several bases. First, P.W. did not deny or recant what she told the interviewer in the videotape. Thus, this case is distinguishable from *State v. Ramsey*, 782 P.2d 480, 484 (Utah 1989), where a plurality of this court found an out-of-court oral statement, recanted at trial by the declarant, to be insufficient to support a conviction for sexual abuse of a child. Nor is the present situation served by the two other cases Seale cites in support of his insufficiency-of-evidence claim: *Acosta v. State*, 417 A.2d 373, 377 (Del.1980), and *Montana v. White Water*, 194 Mont. 85, 634 P.2d 636, 638 (1981). Even if both cases stand for the proposition that a conviction must be reversed if it was obtained solely on the basis of an out-of-court statement, the victims in both cases similarly denied that they made the statements and that the sexual abuse had occurred. *Acosta*, 417 A.2d at 377; *White Water*, 634 P.2d at 637–38. In short, Seale has not cited any authority for his assertion, and our research suggests that there is none.

Second, no evidence was adduced at trial that contradicts the statements P.W. made on the videotape other than Seale's testimony. Because the videotape was appropriately admitted as substantive evidence, the jury was fully entitled to weigh the credibility of P.W.'s videotaped statements and her testimony on the stand against Seale's contradictory testimony and to decide who was telling the truth. *See James*, 819 P.2d at 784; *State v. Hopkins*, 782 P.2d 475, 477 (Utah 1989).

Finally, we note that there is evidence from which the jury could have reasonably inferred that P.W.'s "loss of memory" was in response to her mother's pressure to keep the incidents quiet. Chapman testified that she was afraid of losing custody of P.W. to her ex-husband. More importantly, Chapman's sister testified that Chapman called her the night before trial and asked her not to say anything in court. The jury could have reasonably concluded that Chapman made a similar request to P.W. and that P.W. agreed.

Therefore, based on the foregoing evidence and reasonable inferences therefrom, *see Hamilton*, 827 P.2d at 236; *State v. Booker*, 709 P.2d 342, 345 (Utah 1985), we conclude that the evidence is sufficient to sustain Seale's conviction for the sexual abuse of P.W.[9]

Affirmed.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

---

9. Seale also argues that the trial judge should have instructed the jury to consider the videotape of P.W.'s interview with caution. Because Seale failed to raise this issue at trial, he is precluded from raising it on appeal. Utah R.Crim.P. 19(c); *State v. Emmett*, 839 P.2d 781, 785 (Utah 1992); *Eldredge*, 773 P.2d at 34–35.