2005 UT 1

Sean BERNAT, Lesa Beuchert, Jeremy Kee, Brandon Kvenvold, Donald Lang, Darrin Mann, Matthew Phillips, Joseph Scovell, Dylan T. Serre, Mark Wahlstrom, and Henry T. Zahkarian, Plaintiffs and Petitioners,

v.

The Honorable Michael G. ALLPHIN, The Honorable Ann Boyden, The Honorable Michael K. Burton, The Honorable Glen R. Dawson, The Honorable Donald J. Eyre, The Honorable Denise P. Lindberg, The Honorable Bruce C. Lubeck, Defendants and Respondents.

No. 20030567.

Supreme Court of Utah.

Jan. 7, 2005.

Benjamin A. Hamilton, Salt Lake City, for petitioners.

Brent M. Johnson, Salt Lake City, for respondents.

DURRANT, Justice:

¶ 1 Petitioners challenge the constitutionality of Utah's two-tier justice court system, arguing that this system violates the prohibition against double jeopardy and denies defendants due process and equal protection under the law. They assert that, in light of these alleged violations, the court of appeals abused its discretion when it refused to issue writs of mandamus directing various district courts to dismiss the charges against Petitioners. We reject Petitioners' constitutional challenges and affirm the court of appeals.

## BACKGROUND

¶ 2 Petitioners Sean Bernat, Lesa Beuchert, Jeremy Kee, Brandon Kvenvold, Donald Lang, Darrin Mann, Matthew Phillips, Joseph Scovell, Dylan T. Serre, Mark Wahlstrom, and Henry T. Zakharian (collectively "Petitioners") were convicted of various crimes in several justice courts throughout the state.[1] Each appealed his or her conviction to a district court and, once in district court, challenged the constitutionality of Utah Rule of Judicial Administration 4–608,[2] which governs trial de novo appeals from justice court proceedings in criminal cases. See Utah R. Jud. Admin. 4–608. Specifically, Petitioners challenged the constitutionality of rule 4–608(4),[3] which requires an individual who is convicted in justice court to obtain a certificate of probable cause in order to stay a justice court sentence pending a de novo trial in district court. Petitioners argued that this requirement violates constitutional double jeopardy prohibitions, as well as due process and equal protection guarantees.

¶ 3 When the district courts denied Petitioners' motions to dismiss the charges against them, Petitioners appealed to the court of appeals. Because Utah Code section 78–5–120(7) gives the court of appeals jurisdiction over justice court appeals only where the district court has ruled on the constitutionality of a statute or ordinance and not a rule, see Utah Code Ann. § 78–5–120(7) (Supp.2002), the court of appeals held that it lacked jurisdiction to entertain the appeals and dismissed them accordingly. Petitioners thereafter petitioned the court of appeals for writs of mandamus directing the district courts to grant Petitioners' motions to dismiss on double jeopardy, due process, and equal protection grounds. The court of appeals declined to grant Petitioners' requests, reasoning that Utah's two-tier justice court system was not constitutionally deficient and concluding that Petitioners had failed to demonstrate a "gross or flagrant abuse of discretion" or a "particularly egregious and momentous legal error" that would justify granting the petitions.

¶ 4 This court granted Petitioners' request for certiorari review of the court of appeals' decision. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(a) (2002).

## STANDARD OF REVIEW

¶ 5 "[T]he granting of [a] writ [of mandamus] is always a matter of discretion with th[e] court and never a matter of right on behalf of the applicant." *State v. Ruggeri*, 19 Utah 2d 216, 429 P.2d 969, 971 (1967); *see*

---

1. Although Petitioners challenge the court of appeals' ruling with respect to these eleven individuals, Petitioners have only provided us with a record for the first named defendant, Sean Bernat. Since neither party argues to the contrary, we assume that the procedural background as to the other ten individuals is, for all relevant purposes, identical to that of Sean Bernat. We recite the facts of this case accordingly.

2. Since this action was filed, rule 4–608 has been repealed and replaced by Utah Rule of Criminal Procedure 38. Although the text of rule 38 is similar to that of rule 4–608, we rely on the procedures set forth in rule 4–608 for purposes of our analysis.

3. During the course of the proceedings below, rule 4–608 was renumbered effective April 1, 2002. Because the text in both versions is identical, we cite herein the renumbered version of the rule.

*also Renn v. Utah State Bd. of Pardons,* 904 P.2d 677, 683 (Utah 1995) ("With respect to mandamus . . ., a court has discretion in granting requested relief."). Thus, whether the court of appeals properly refused to issue a writ providing the relief requested by Petitioners is a matter that we review for an abuse of discretion. *Osborne v. Adoption Ctr. of Choice,* 2003 UT 15, ¶ 22, 70 P.3d 58.

## ANALYSIS

¶ 6 Before addressing whether the procedures set forth in Utah Rule of Judicial Administration 4–608 violate the prohibition against double jeopardy or deny defendants due process or equal protection as Petitioners allege, we first provide a brief overview of the operation of Utah's two-tier justice court system.

### I. UTAH'S TWO–TIER JUSTICE COURT SYSTEM

¶ 7 Justice courts are courts "not of record," [4] authorized by article VIII, section 1 of the Utah Constitution and governed by the Utah Code. *See* Utah Code Ann. §§ 78–5–101 to –140 (2002). Justice courts are created by municipalities or counties, *id.* § 78–5–101.5, and have jurisdiction over certain small claims cases, "class B and C misdemeanors, violation of ordinances, and infractions committed within [the justice courts'] territorial jurisdiction, except those offenses over which the juvenile court has exclusive jurisdiction," *id.* § 78–5–104.

¶ 8 Because justice courts are courts not of record, the appeals process from a justice court decision is unique. A defendant who has pleaded guilty or been convicted in justice court is entitled to a trial de novo in a district court, provided that he or she files a notice of appeal within thirty days of the sentence or guilty plea. *Id.* § 78–5–120(1). If a defendant desires to have an adverse judgment stayed pending a trial de novo before the district court, the defendant must

also obtain a certificate of probable cause. Utah R. Jud. Admin. 4–608(4). The justice court makes the determination in the first instance of whether to grant an application for a certificate of probable cause. *Id.* 4–608(5). If a justice court denies the application, a defendant may apply to the district court for a stay.[5] *Id.* Like justice courts, a district court will only stay a sentence if it issues a certificate of probable cause. Utah R.Crim. P. 27(a)(2). A defendant's application for a certificate of probable cause must be in writing and

> accompanied by a memorandum of law identifying the issues to be presented on appeal and supporting the defendant's position that those issues raise a substantial question of law or fact reasonably likely to result in reversal, an order for a new trial[,] or a sentence that does not include a term of incarceration in jail or prison.

*Id.* 27(d)(2). A district court may issue a certificate of probable cause only if the court finds that the appeal "is not being taken for the purpose of delay" and "raises substantial issues of law or fact reasonably likely to result in reversal, an order for a new trial[,] or a sentence that does not include a term of incarceration in jail or prison." *Id.* 27(f).

¶ 9 Petitioners argue that the process outlined above violates double jeopardy, due process, and equal protection, and that, as a result of these violations, the court of appeals abused its discretion in refusing to issue writs of mandamus ordering the district courts to dismiss the charges against Petitioners. We examine each of these alleged constitutional violations in turn.

### II. UTAH'S TWO–TIER JUSTICE COURT SYSTEM DOES NOT VIOLATE THE PROHIBITION AGAINST DOUBLE JEOPARDY

¶ 10 Both the United States and Utah Constitutions prohibit the state from

---

**4.** A court "not of record" is literally a court that does not maintain a record of the proceedings before it.

**5.** Subsection (e) of Utah Rule of Criminal Procedure 38 has eliminated the provision in rule 4–608(5), which states that "[i]f the justice court

denies the application [for a certificate of probable cause], the defendant may apply to the district court for a stay under [Utah Rule of Criminal Procedure] 27." *Compare* Utah R.Crim. P. 38(e) *with* Utah R. Jud. Admin. 4–608(5).

placing an individual twice in jeopardy for the same offense.[6] U.S. Const. amend. V; Utah Const. art. I, § 12. In jury trials, jeopardy attaches after a jury has been selected and sworn. *Illinois v. Somerville,* 410 U.S. 458, 466, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *State v. Cram,* 2002 UT 37, ¶ 8, 46 P.3d 230. In bench trials, jeopardy attaches after the first witness is sworn and the court begins to hear evidence. *Crist v. Bretz,* 437 U.S. 28, 37 n. 15, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *State v. Musselman,* 667 P.2d 1061, 1065 (Utah 1983). Because Petitioners have not provided a separate analysis of the double jeopardy protections afforded under our state constitution, we limit our review to examining the constitutionality of Utah's justice court system under federal law. *See State v. Seale,* 853 P.2d 862, 873 n. 6 (Utah 1993).

¶ 11 The Double Jeopardy Clause embodies three separate protections: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense. *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 306–07, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984). "The primary purpose of foreclosing a second prosecution after conviction ... is to prevent a defendant from being subjected to multiple punishments for the same offense." *Id.* at 307, 104 S.Ct. 1805.

¶ 12 Petitioners do not argue that Utah's justice court system subjects them to the possibility of multiple punishments, nor do they contend that recourse from a justice court conviction in the form of a trial de novo violates double jeopardy per se. Rather, Petitioners argue that Utah's justice court scheme impermissibly places a defendant twice in jeopardy because the system does not automatically "wipe the slate clean" and void the judgment against a justice court defendant while his or her trial de novo is pending before the district court. Petitioners maintain that "[o]ur system of justice cannot allow an accused to exercise his right to appeal by de novo trial in district court while standing before that court convicted of the exact offense he will be tried for a second time." In support of this assertion, Petitioners cite the United States Supreme Court's decisions in *Colten v. Kentucky, Ludwig v. Massachusetts,* and *Justices of Boston Municipal Court v. Lydon,* arguing that under these cases, the Constitution requires justice court sentences to be vacated on appeal. We review each of these decisions before addressing Petitioners' contention.

### A. The Supreme Court's Examination of Two–Tier Justice Court Systems in Colten, Ludwig, and Lydon

¶ 13 The Supreme Court first examined the constitutionality of a two-tier justice court system in *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).[7] Under the Kentucky system, a defendant convicted in a justice court proceeding who requested a new trial within the specified statutory time frame was guaranteed an absolute right to a trial de novo in a court of general criminal jurisdiction. *Id.* at 112–13., 92 S.Ct. 1953 If a defendant sought a new trial, the Kentucky system essentially wiped the slate clean by vacating the defendant's sentence. The prosecution and defense would begin anew and the trial de novo would be in no way bound by the justice court's findings or judgment. *Id.* at 113, 92 S.Ct. 1953. In other words, the case would be regarded exactly as if it had been brought in the court of general jurisdiction in the first instance. *Id.*

¶ 14 In *Colten,* a defendant who was first convicted and fined ten dollars in a justice court exercised his right to appeal his conviction through a trial de novo in a court of general jurisdiction, where he was once again convicted and fined a sum of fifty dollars.

---

6. The Double Jeopardy Clause of the United States Constitution was deemed to be applicable to the states through the Fourteenth Amendment in *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

7. The terminology used to refer to two-tier court systems similar to Utah's justice court system varies from state to state. For clarity and convenience, we herein refer to these systems as "justice court systems" and to their courts as "justice courts."

*Id.* at 107–08, 92 S.Ct. 1953. On appeal, the Kentucky Court of Appeals rejected the defendant's argument that the larger fine imposed during his trial de novo violated the constitutional protections outlined in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *See Colten*, 407 U.S. at 108, 92 S.Ct. 1953.

¶ 15 The Supreme Court affirmed the court of appeals' decision. *Id.* at 120, 92 S.Ct. 1953. The Court acknowledged that *Pearce* forbids the imposition of a greater punishment following a successful appeal but rejected the assertion that the Kentucky system was infirm simply because the trial de novo judge was able to impose a harsher sentence than that imposed by the justice court. *Id.* at 115–17, 92 S.Ct. 1953. More importantly, the Court also rejected in dicta the contention that the *Pearce* protections were needed "to minimize an asserted unfairness to criminal defendants who must endure a trial in an inferior [justice] court with less-than-adequate protections in order to secure a trial comporting completely with constitutional guarantees." *Id.* at 118, 92 S.Ct. 1953. The Court was unpersuaded that the Kentucky system "disadvantage[d] defendants any more or any less than trials conducted in a court of general jurisdiction in the first instance," explaining as follows:

> Proceedings in the inferior courts are simple and speedy, and, if the results in [the defendant's] case are any evidence, the penalty is not characteristically severe. Such proceedings offer a defendant the opportunity to learn about the prosecution's case and, if he chooses, he need not reveal his own. He may also plead guilty without a trial and promptly secure a *de novo* trial in a court of general criminal jurisdiction. He cannot, and will not, face the realistic threat of a prison sentence in

the inferior court without having the help of counsel, whose advice will also be available in determining whether to seek a new trial, with the slate wiped clean, or to accept the penalty imposed by the inferior court.

*Id.* at 118–19, 92 S.Ct. 1953. The Court further explained that

> [i]n reality, [a defendant's] choices are to accept the decision of the judge and the sentence imposed in the inferior court or to reject what in effect is no more than an offer in settlement of his case and seek the judgment of judge or jury in the superior court, with sentence to be determined by the full record made in that court.

*Id.* at 119, 92 S.Ct. 1953. Thus, *Colten* concluded that the Kentucky two-tier justice court system was not unconstitutional.

¶ 16 In *Ludwig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976), the Court was called upon to examine the constitutionality of Massachusetts's two-tier justice court system—a system that differed in several major respects from the Kentucky system examined in *Colten*. Under the Massachusetts system, a defendant who pleaded guilty before a justice court could not receive a trial de novo; instead, a defendant could only challenge his or her sentence on appeal.[8] *Id.* at 620–21, 96 S.Ct. 2781. Additionally, a defendant who pleaded not guilty before a justice court could only receive a trial by judge, not by jury. *Id.* at 621, 96 S.Ct. 2781. Like the Kentucky two-tier justice court system, however, any conviction imposed by the justice court would be vacated upon indication that the defendant was appealing his conviction.[9] *Id.* at 621–22, 96 S.Ct. 2781.

¶ 17 In *Ludwig*, the defendant was tried before a justice court. *Id.* at 623, 96 S.Ct. 2781. At the outset of the trial, the court

8. Although a defendant could not simply plead guilty to avoid a trial in the first instance, as in *Colten*, the Massachusetts scheme allowed a defendant to essentially avoid a trial in the justice court through an informal procedure known as "admitting sufficient findings of fact." *Ludwig*, 427 U.S. at 621, 96 S.Ct. 2781. Using this procedure, a justice court could hear enough evidence to assure itself that there was probable cause to believe the defendant committed the charged offense, make a finding of guilt, and enter a judg-

ment of conviction against the defendant, which would allow the defendant to then exercise his or her right to a de novo trial. *Id.*

9. Although the Massachusetts system vacated a defendant's conviction on appeal, a defendant could nevertheless suffer adverse collateral consequences from his justice court conviction, including the revocation of parole or a driver's license. *Ludwig*, 427 U.S. at 622, 96 S.Ct. 2781.

denied the defendant's request that he receive a trial by jury, and the defendant was thereafter adjudged guilty and fined. *Id.* In a de novo proceeding before a district court, the defendant moved unsuccessfully to dismiss the charges against him on the basis that the justice court proceedings deprived him of his constitutional right to a speedy trial by jury, and that the de novo trial proceeding constituted double jeopardy. *Id.* On appeal, the Supreme Judicial Court of Massachusetts affirmed the defendant's conviction. *Id.*

¶ 18 The *Ludwig* Court agreed that the Massachusetts system was constitutional. *Id.* at 630, 632, 96 S.Ct. 2781. First, the Court reasoned that a defendant was not deprived of a right to a speedy jury trial merely because he or she was not entitled to a jury in the first instance. *Id.* at 626, 96 S.Ct. 2781. Moreover, the Court also rejected the defendant's double jeopardy argument that the de novo procedure forced an accused to "risk" two trials, concluding that such an assertion was without substance. *See id.* at 627, 631, 96 S.Ct. 2781. The Court explained as follows:

> The decision to secure a new trial rests with the accused alone. A defendant who elects to be tried *de novo* in Massachusetts is in no different position than is a convicted defendant who successfully appeals on the basis of the trial record and gains reversal of his conviction and a remand of his case for a new trial. Under these circumstances it long has been clear that the [s]tate may reprosecute. The only difference between an appeal on the record and an appeal resulting automatically in a new trial is that a convicted defendant in Massachusetts may obtain a "reversal" and a new trial without assignment of error in the proceedings at his first trial. Nothing in the Double Jeopardy Clause prohibits a[s]tate from affording a defendant two

opportunities to avoid conviction and secure an acquittal.

*Id.* at 631–32, 96 S.Ct. 2781 (citation omitted).

¶ 19 The Supreme Court re-examined the constitutionality of the Massachusetts system in *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984).[10] There, a defendant who chose to proceed with his case in a first-tier bench trial was convicted and sentenced in a justice court. *Id.* at 297, 104 S.Ct. 1805. The defendant thereafter requested a trial de novo and, before the trial commenced, moved to dismiss the charge against him on the ground that no evidence of intent had been presented during his first bench trial. *Id.* at 297–98, 104 S.Ct. 1805. In support of his motion, defendant cited *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), in which the Supreme Court held that double jeopardy bars a second retrial when an appellate court reverses a defendant's conviction for insufficient evidence. *Lydon,* 466 U.S. at 297, 104 S.Ct. 1805. Although the trial court denied the defendant's motion to dismiss, a federal district court granted the defendant's petition for a writ of habeas corpus, which the First Circuit Court of Appeals subsequently affirmed. *Id.* at 298–300, 104 S.Ct. 1805.

¶ 20 The Supreme Court reversed the federal courts, rejecting the assertion that its prior holding in *Burks* applied to a defendant's appeal from a justice court. *Id.* at 309–10, 104 S.Ct. 1805. The Court explained that the reprosecution of a defendant after his or her conviction has been overturned on appeal is permitted under the concept of "continuing jeopardy," a principle under which proceedings against a defendant may continue as long as jeopardy has not terminated. *See id.* at 308–09, 104 S.Ct. 1805. Under a continuing jeopardy rationale, the Court reasoned that the defendant could not identify any stage of the proceeding in his case where jeopardy was terminated. *Id.* at

---

**10.** Following the Court's decision in *Ludwig,* Massachusetts modified its two-tier system to allow a defendant to avoid a first-tier trial and proceed directly to a jury trial. *Lydon,* 466 U.S. at 304, 104 S.Ct. 1805. Thus, under the modified system, a defendant could either elect a jury trial in the first instance and, if convicted, seek review through the normal appellate process or elect a bench trial and, if convicted, exercise an absolute right to a trial de novo before a jury. *Id.* at 297, 104 S.Ct. 1805.

309, 104 S.Ct. 1805. Indeed, the Court noted that

[w]hile technically [the defendant] is "tried again," the second stage proceeding can be regarded as but an enlarged, fact-sensitive part of a single, continuous course of judicial proceedings during which, sooner or later, a defendant receives more—rather than less—of the process normally extended to criminal defendants in this nation.

*Id.* (second alteration in original) (internal quotation omitted).

¶ 21 The *Lydon* Court also observed that the defendant "was in 'jeopardy' only in a theoretical sense." *Id.* at 310, 104 S.Ct. 1805. It reasoned that under the Massachusetts two-tier system, "virtually nothing [could] happen to a defendant at a first-tier trial that he [could] not avoid" because the absolute right to a de novo trial, once exercised, "wiped out" the bench trial judgment. *Id.* Noting that a two-tier system actually affords benefits to defendants that are not available to defendants in a more conventional system, the Court concluded that retrying the defendant was constitutionally acceptable even if his first bench trial conviction rested on insufficient evidence. *Id.* at 312, 104 S.Ct. 1805.

### B. *Colten, Ludwig, and Lydon Do Not Require Justice Court Sentences To Be Automatically Vacated*

¶ 22 Neither *Colten, Ludwig,* nor *Lydon* directly addressed whether a sentence imposed in a justice court must be vacated pending a de novo trial. Nevertheless, Petitioners argue that the explicit and implicit language in these cases requires such action to survive constitutional scrutiny under the Double Jeopardy Clause. We disagree.

¶ 23 We acknowledge that a defendant's ability to automatically obtain a "clean slate" on appeal from a justice court conviction played an important role in the Court's determination that the systems examined in *Colten, Ludwig,* and *Lydon* were constitutional. However, the Kentucky and Massachusetts systems examined in those cases

were structured in such a way that a defendant appealing a conviction from a justice court was best viewed as if he or she had successfully appealed a district court conviction, obtained a reversal, and been granted a new trial. *See Ludwig,* 427 U.S. at 631, 96 S.Ct. 2781 ("A defendant who elects to be tried de novo [under the Massachusetts system] is in no different position than is a convicted defendant who successfully appeals on the basis of the trial record and gains a reversal of his conviction and a remand of his case for a new trial."). Utah's justice court system is different.

¶ 24 Unlike Kentucky and Massachusetts, when a defendant convicted in a Utah justice court exercises his or her right to a trial de novo, the justice court system structures the de novo trial itself as an appellate review of the conviction—albeit in trial form instead of a more traditional form of appellate review. Thus, a defendant stands in a position similar to a district court defendant appealing his or her conviction before either this court or the court of appeals. And where jeopardy has attached in the justice court proceeding and remains attached without termination during the trial de novo, continuing jeopardy allows for a defendant-initiated appellate review in the form of a de novo trial without implicating double jeopardy concerns. *Cf. Lydon,* 466 U.S. at 308–09, 104 S.Ct. 1805.[11]

¶ 25 Utah's system is best viewed as placing defendants in the same position as district court defendants appealing their sentence in the first instance for several reasons. First, Utah's system is structured to allow district courts to exercise appellate jurisdiction. Article VIII, section 5 of the Utah Constitution clearly states that district courts "shall have *appellate jurisdiction* as provided by statute." Utah Const. art. VIII, § 5 (emphasis added). Consistent with this authority, the Utah Legislature has provided that district courts "ha[ve] *appellate jurisdiction* to adjudicate trials de novo of the judgments of the justice court." Utah Code Ann. § 78–3–4(5) (2002) (emphasis added). In light

---

11. Petitioners argue that the Supreme Court has repudiated the concept of continuing jeopardy. However, in *Lydon,* five justices explicitly acknowledged the continuing validity of this doctrine. 466 U.S. at 308–10, 104 S.Ct. 1805.

of this framework, we have previously held that in Utah, a trial de novo in district court satisfies the right to appeal from a justice court. *City of Monticello v. Christensen,* 788 P.2d 513, 516 (Utah 1990).

¶ 26 Second, unlike the Kentucky system in *Colten,* the result of a trial de novo under the Utah system is tied to the justice court proceedings below. In *Wisden v. District Court,* 694 P.2d 605 (Utah 1984) (per curiam), this court held that a defendant convicted in justice court proceedings cannot receive a harsher penalty if subsequently convicted in a trial de novo. *Id.* at 605–06. Thus, a trial de novo before a district court is more properly regarded "as but an enlarged, fact-sensitive part of a single, continuous course of judicial proceedings during which, sooner or later, a defendant receives more—rather than less—of the process normally extended to criminal defendants in this nation." *Lydon,* 466 U.S. at 309, 104 S.Ct. 1805 (internal quotation omitted).

¶ 27 Finally, the policies underlying the double jeopardy protections do not come into play when a justice court defendant requests a de novo trial. As previously noted, the Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Id.* at 306–07, 104 S.Ct. 1805. These protections effectively bar the state from "mounting successive prosecutions" and wearing down the defendant, " 'thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' " *Id.* at 307, 104 S.Ct. 1805 (quoting *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). They are also primarily intended "to prevent a defendant from being subjected to multiple punishments for the same offense." *Id.* (citing *United States v. Wilson,* 420 U.S. 332, 343, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975)). None of these policy considerations are implicated under Utah's system.

¶ 28 There is no question that, in Utah, the state is prohibited from mounting successive prosecutions against a defendant who has been found not guilty in a justice court proceeding. In fact, the decision to secure a trial de novo in district court rests with the accused alone. Moreover, as Petitioners concede, there is no concern that a defendant could receive multiple punishments in both a justice court and a district court for the same offense.

¶ 29 Petitioners argue that viewing a de novo trial as equivalent to a traditional or "true appeal" is "misguided," asserting that doing so contradicts the meaning of "trial de novo" and "ignore[s] that the justice court system is significantly different" than other Utah courts. We disagree.

¶ 30 Petitioners correctly observe that the term "de novo" means literally "anew, afresh, a second time," *Pledger v. Cox,* 626 P.2d 415, 416 (Utah 1981) (internal quotation omitted), and that the expression "trial de novo" can mean either (1) a complete retrial upon new evidence, or (2) a trial upon the record made before the lower tribunal, *Univ. of Utah v. Indus. Comm'n,* 736 P.2d 630, 632 (Utah 1987). Petitioners also correctly point out that we have used an appeal from a justice court to a district court as an example of the first "complete retrial upon new evidence" type of de novo trial, wherein " 'the case is tried in the district court as if it originated there.' " *Id.* (quoting *Denver & Rio Grande W. R.R. Co. v. Pub. Serv. Comm'n,* 98 Utah 431, 100 P.2d 552, 555 (1940)); *see also Pledger,* 626 P.2d at 416 (observing that the first "complete retrial upon new evidence" meaning of "de novo" is applicable to appeals from a justice court). Contrary to Petitioners' assertions, however, this language can be interpreted consistently with a trial de novo functioning as a true appeal.

¶ 31 "The meaning of 'trial de novo' . . . is obviously dictated by the wording and context of the statute in which it appears and by the nature of the . . . decision and procedure being reviewed." *Pledger,* 626 P.2d at 416–17. Here, a de novo trial is no less "anew," "afresh," or "a complete retrial upon new evidence" simply because it functions as a form of appellate review. The state bears

the same burden of establishing a defendant's guilt in a trial de novo as it would had the case originated there, and a defendant is afforded a clean slate upon which to relitigate the facts as to his guilt or innocence. The outcome of the prior justice court proceeding plays no part in the trial de novo, except that a district court is prohibited from imposing a harsher sentence than that imposed by the justice court.[12]

¶ 32 Moreover, we reject the contention that a trial de novo cannot be considered on par with more traditional appeals simply because it differs in form. Justice courts "are designed, in the interest of both the defendant and the [s]tate, to provide speedier and less costly adjudications than may be possible in criminal courts of general jurisdiction." *Colten*, 407 U.S. at 114, 92 S.Ct. 1953. Due to this difference in design, it stands to reason that the differences between justice courts and district courts would necessitate different forms of appellate review. Because Utah justice courts are not "courts of record," it is not only constitutionally permissible to allow a defendant the opportunity to relitigate his or her case anew, but practically and reasonably sound.

¶ 33 Thus, we conclude that Utah's two-tier justice court system does not violate the prohibition against double jeopardy, even though a defendant's sentence from justice court is not automatically vacated pending a trial de novo in district court. Jeopardy does not terminate when a defendant is convicted in justice court; therefore, a defendant is not placed twice in jeopardy when he or she requests a de novo trial. Because " 'nothing in the Double Jeopardy Clause prohibits a[s]tate from affording a defendant two opportunities to avoid conviction and secure an acquittal,' " *Lydon*, 466 U.S. at 312, 104 S.Ct. 1805 (quoting *Ludwig*, 427 U.S. at 632, 96 S.Ct. 2781), the court of appeals correctly determined that Utah's justice court system does not violate the Double Jeopardy Clause.

### III. UTAH'S TWO–TIER JUSTICE COURT SYSTEM DOES NOT DENY A DEFENDANT DUE PROCESS OF LAW

¶ 34 In addition to their arguments regarding double jeopardy, Petitioners argue that Utah's two-tier justice court system operates to deny defendants their constitutionally protected due process rights. Specifically, Petitioners argue that Utah's system (1) discourages and burdens the right to appeal, (2) unlawfully shifts the burden to the accused to prove entitlement to an appeal, and (3) burdens the presumption of innocence. We address each of these arguments in turn.

¶ 35 In *Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966), the Supreme Court observed that once a state establishes avenues of appellate review, "it is ... fundamental that ... these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." *Id.* at 310–11, 86 S.Ct. 1497. Relying on this principle, Petitioners assert that the appeals process from a justice court impermissibly burdens a defendant's right to appeal by requiring him or her to prepare and file a petition for a certificate of probable cause. They argue that the procedures for obtaining a stay of a sentence prior to a trial de novo are "extremely burdensome," that the rules relating to the timing of a hearing on a petition are "draconian," and that "the economic burdens placed on a justice court defendant to accomplish even one round of filing a petition, let alone the possibility, if not the likelihood of the second round, are prohibitive for a system designed to advantage citizens in its simplicity." Petitioners argue that these procedural hurdles violate due process because they are overly burdensome, and that they thereby needlessly and impermissibly chill a justice court defendant's right to appeal.

¶ 36 Petitioners' argument is flawed in that it focuses on the perceived inadequacies relating to a defendant's ability to obtain a *stay* of his or her conviction, not on a defendant's

---

12. In this respect, our observation that an appeal from a justice court requires a de novo trial to proceed "as if it originated there," *Pledger*, 626 P.2d at 416 (internal quotation omitted), is, in the strictest sense, incorrect, given that a district court cannot impose a greater sentence than the sentence imposed in the justice court proceeding, *Wisden*, 694 P.2d at 605–06.

ability to effectively *appeal* his or her conviction. A defendant convicted in justice court possesses an absolute entitlement to a trial de novo in the district court, provided he or she files a simple notice of appeal within thirty days of sentencing or the entry of a guilty plea. Utah Code Ann. § 78–5–120(1) (2002). Because the procedures for obtaining a stay, and any alleged difficulties arising therefrom, are wholly separate from and have no impact on a defendant's ability to appeal his or her conviction, *see* Utah R. Jud. Admin. 4–608(4), we cannot conclude that the stay procedures burden a defendant's right to appeal.

¶ 37 Petitioners further assert that Utah's justice court system places an impermissible burden on the accused to persuade the court of his or her automatic right to appeal. This assertion is also misguided. The memorandum of points and authorities Petitioners apparently believe is a necessary prerequisite for an appeal relates only to the issuance of a certificate of probable cause needed to obtain a stay of conviction—not a defendant's right or ability to appeal his or her conviction. *See id.;* Utah R.Crim. P. 27(d)(2). As such, a defendant is under no obligation to prove or persuade a court of any right to appeal.

¶ 38 Finally, Petitioners argue that several sections within Utah Rule of Judicial Administration 4–608 conflict and thereby implicate the due process rights of those effecting an appeal from justice courts. Aside from merely quoting or paraphrasing the language of these subsections, however, Petitioners provide no meaningful analysis as to how these sections conflict, or more importantly, why these alleged conflicts violate due process. Because we find this issue to be inadequately briefed, we decline to address it.

*Beehive Tel. Co. v. Pub. Serv. Comm'n,* 2004 UT 18, ¶ 38, 89 P.3d 131.

¶ 39 In sum, we reject Petitioners' arguments and conclude that Utah's two-tier justice court system does not violate any of Petitioners' due process rights.[13]

## IV. UTAH'S TWO-TIER JUSTICE COURT SYSTEM DOES NOT DENY A DEFENDANT EQUAL PROTECTION UNDER THE LAW

 ¶ 40 Petitioners' final challenge to the court of appeals' refusal to issue a writ of mandamus rests upon their assertion that Utah's justice court system denies defendants equal protection under the law. They assert that because a justice court defendant maintains a guilty status pending a trial de novo, a justice court defendant is treated differently than a defendant who has obtained a new trial after successfully reversing his or her sentence on appeal. Petitioners argue that "Utah's failure to permit the justice court defendant to face his de novo trial free from the result of the first conviction ... violates equal protection of the law." We find this argument to be without merit.

 ¶ 41 As a general matter, the Equal Protection Clause requires all persons similarly situated to be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).[14] However, contrary to Petitioners' assertions, a defendant appealing from a justice court conviction is *not* in a similar position to a defendant who has been convicted in district court and subsequently secured the reversal of his or her sentence on appeal. Rather, a justice court defendant is in a similar position to a defendant appealing

---

13. Under Utah's two-tier justice court system, "[j]ustice court judges are not required to be admitted to practice law in the state as a qualification to hold office." Utah Code Ann. § 78–5–137 (2002). Petitioners suggest that a sentence imposed by a non-lawyer justice court judge violates due process under *North v. Russell,* 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976), if the sentence is not vacated pending a trial de novo. Because Petitioners have not argued, nor is there any indication in the record, that any of the Petitioners were sentenced by non-lawyer judges, the issue is not before us and we decline to address it. We observe, however, that such a

scenario could conceivably raise due process concerns.

14. The Utah Constitution provides a similar protection, stating that "[a]ll laws of a general nature shall have uniform operation." Utah Const. art. I, § 24. Although Petitioners cite the state constitution in support of their equal protection argument, they provide no separate state analysis. We therefore limit our review to a federal analysis. *See State v. Seale,* 853 P.2d 862, 873 n. 6 (Utah 1993).

from a district court conviction in the first instance. When viewed from this correct perspective, a justice court defendant is, if anything, treated more favorably than a similarly situated district court defendant. Unlike defendants appealing from a district court conviction, a defendant convicted in justice court is afforded a second opportunity to relitigate the facts relating to his or her guilt or innocence after having had the advantage of learning about the prosecution's case during the first trial. Therefore, we find no equal protection violation in the operation of Utah's justice court system.

## CONCLUSION

¶ 42 We are unpersuaded by Petitioners' assertions that Utah's two-tier justice court system either violates the constitutional prohibition against double jeopardy or denies a defendant due process or equal protection under the law. Accordingly, the court of appeals did not abuse its discretion in refusing to issue writs of mandamus directing the district courts to dismiss all charges against the Petitioners. Affirmed.

¶ 43 Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.

DURHAM, Chief Justice, concurring:

¶ 44 I concur in this opinion, noting that I still maintain the views I expressed in my dissent in *Monticello v. Christensen,* 788 P.2d 513 (Utah 1990), but do not believe those views require a different result in this case.