IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| David Eugene Falkner, | ) | OPINION |
| | ) | |
| Petitioner, | ) | Case No. 20111082-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (October 25, 2012) |
| Honorable Denise P. Lindberg, | ) | |
| | ) | 2012 UT App 303 |
| Respondent. | ) | |

-----

Original Proceeding in this Court

Attorneys:     C. Danny Frazier, South Jordan, for Petitioner
                    Brent M. Johnson, Salt Lake City, for Respondent

-----

Before Judges Davis, Voros, and Christiansen.

DAVIS, Judge:

¶1      David Eugene Falkner petitions this court for extraordinary relief pursuant to rule 65B(d) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 65B(d). He challenges the district court's denial of his motion to reinstate his appeal from a justice court judgment, which the district court had remanded to the justice court for abandonment. We grant the petition and direct the district court to reconsider Falkner's motion to reinstate.

BACKGROUND

¶2      Falkner was convicted in justice court of class B misdemeanor criminal mischief. Falkner appealed the criminal judgment, and his case was assigned to Judge Denise P. Lindberg in the Third District Court. A pretrial conference was scheduled for July 12, 2011, at 9:00 a.m. Falkner's attorney informed the court in advance that he would be late for the pretrial conference due to hearings scheduled in another court at the same time. The attorney then told Falkner that he did not need to arrive at the hearing until 10:00 a.m., when the attorney himself expected to arrive. When Falkner and his attorney arrived just after 10:00 a.m., Judge Lindberg's courtroom was locked. The attorney contacted Judge Lindberg's clerk, who informed him that the case had been remanded to the justice court for abandonment. *See generally* Utah R. Crim. P. 38(h) ("The district court may . . . remand a case to the justice court if it finds that the defendant has abandoned the appeal."). The clerk confirmed that there was a note in the docket that the attorney intended to be late for the pretrial conference.

¶3      On August 16, 2011, thirty-five days after the case was remanded to justice court, Falkner filed a motion to reinstate his appeal. The district court denied the motion, explaining that counsel's notice that he would be late did not excuse Falkner's failure to show up for the pretrial conference and that the district court lacked jurisdiction to reinstate the appeal either because the case had already been remanded to the justice court or because the motion to reinstate was filed more than thirty days after the remand. A motion to reconsider filed on November 7, 2011, was likewise denied. Falkner then filed a petition for extraordinary relief with this court on December 14, 2011, arguing that the district court abused its discretion by denying his motion to reinstate the appeal.

ISSUES AND STANDARDS OF REVIEW

¶4      Falkner argues that the district court had jurisdiction to consider his motion to reinstate and that the district court abused its discretion by denying that motion without considering whether his failure to appear at the hearing constituted excusable neglect. Relying on this argument, Falkner requests that we grant him extraordinary relief from the district court's denial of his motion to reinstate. "Where no other plain, speedy and adequate remedy is available, a person may petition the court for

extraordinary relief" on the ground that, inter alia, "an inferior court . . . has . . . abused its discretion." Utah R. Civ. P. 65B(a), (d)(2)(A); *see also Gordon v. Maughan*, 2009 UT App 25, ¶ 4, 204 P.3d 189. A district court's decision as to whether to reinstate an appeal from justice court is discretionary. *See Gordon*, 2009 UT App 25, ¶ 21. Nevertheless, to the extent the district court's conclusions implicate issues of law, "we afford [those] conclusions no deference." *Id.* ¶ 4.

ANALYSIS

¶5     We must first determine whether the district court had jurisdiction to consider Falkner's motion to reinstate after the case was remanded to the justice court and, if so, how long it retained that jurisdiction. Having analyzed supreme court cases dealing with the relationship between remittitur and jurisdiction, we conclude that remand to the justice court does not necessarily divest the district court of jurisdiction. We further determine that the district court must retain jurisdiction for a reasonable time sufficient to resolve appropriate postjudgment[1] motions. Because the district court in this case declined on an improper basis to exercise jurisdiction, we find it appropriate to grant Falkner's petition for extraordinary relief and remand the case to the district court with additional instructions for resolving Falkner's motion to reinstate.

  I. We Look to the Rules of Appellate Procedure for Guidance in Analyzing the District

---

[1]We refer to any motions following a remand generically as "postjudgment" for convenience. However, we recognize that motions following a remand may not technically be considered "postjudgment" because a remand for abandonment may not technically be a "judgment." Furthermore, we observe that the previous version of rule 38 of the Utah Rules of Criminal Procedure permitted the district court to "*dismiss the appeal and* remand the case to the justice court if the appellant . . . fails to appear," Utah R. Crim. P. 38(g)–(g)(1) (2008) (emphasis added), while the current version states only that "[t]he district court may . . . remand a case to the justice court if it finds that the defendant has abandoned the appeal" and does not explicitly mention dismissal, *id.* R. 38(h) (2012). The fact that this amendment was made in the context of rewriting the entire rule, rather than for the purpose of modifying this particular subsection, *see id.* amend. notes, makes it unlikely that a substantive change was truly intended by the omission of the word "dismiss." However, we acknowledge the possibility that, under the current version, a remand may or may not amount to a dismissal.

Court's Jurisdiction Over Appeals from Justice Court.

¶6    "[T]he appeals process from a justice court decision is unique" in that "[a] defendant who has pleaded guilty or been convicted in justice court is entitled to a trial de novo in a district court, provided that he or she files a notice of appeal within thirty days of the sentence or guilty plea." *Bernat v. Allphin*, 2005 UT 1, ¶ 8, 106 P.3d 707. The hybrid nature of this proceeding makes it difficult at times to determine what procedures might apply in situations where no procedure is explicitly provided for in the context of appeals from justice court. Falkner asserts that we should employ only the rules of civil and criminal procedure to resolve the jurisdictional issue, while Judge Lindberg suggests that we rely on the Utah Rules of Appellate Procedure. While the form of a trial de novo differs from that of a traditional appeal, it is still considered an appellate proceeding,[2] *see id.* ¶¶ 25, 30–32, and we therefore find it appropriate to employ the rules of appellate procedure "as a model in the context of justice court appeals," *see Gordon*, 2009 UT App 25, ¶ 22 n.7.

## II. An Appellate Court Does Not Necessarily Lose Jurisdiction When a Case Is Remanded to a Lower Court.

---

[2]"[A] justice court appellant is [not] similarly situated to a criminal defendant whose case is originally being tried in district court" but is rather "'in a similar position to a defendant appealing from a district court conviction in the first instance.'" *Gordon v. Maughan*, 2009 UT App 25, ¶ 16, 204 P.3d 189 (emphasis omitted) (quoting *Bernat v. Allphin*, 2005 UT 1, ¶ 41, 106 P.3d 707); *see also* Utah Const. art. VIII, § 5 (providing for district courts to exercise "*appellate jurisdiction* as provided by statute" (emphasis added)); Utah Code Ann. § 78A-5-102(5) (Supp. 2012) (granting the district court "*appellate jurisdiction* over judgments and orders of the justice court as outlined in Section 78A-7-118" (emphasis added)); *Gordon*, 2009 UT App 25, ¶¶ 10–11 (examining modifications to the rules governing appeals from justice court, which removed language dictating that such appeals "shall be conducted as if the matter were originally filed in [the district] court" and added provisions relating to dismissal and remand, and, based on those modifications, rejecting the rationale of the court of appeals' previous holding in *Dean v. Henriod*, 1999 UT App 50, 975 P.2d 946, which suggested that appeals from a justice court to a district court should be treated similarly to an original action in the district court (emphasis and internal quotation marks omitted) (citing Utah R. Jud. Admin. 4-608 (2002) (repealed 2003); Utah R. Crim. P. 38)).

¶7 In support of her assertion that the district court lost jurisdiction upon remand, Judge Lindberg points us to our decision in *State v. Clark*, 913 P.2d 360 (Utah Ct. App. 1996), in which we rejected a defendant's attempt to appeal his case after the appeal had once been dismissed for failure to prosecute, explaining that once the case was remitted, "this court lost jurisdiction over the matter and . . . the dismissal . . . became an adjudication on the merits." *Id.* at 362–63. Judge Lindberg asserts that *Clark* stands for the proposition that a remand to a lower court necessarily divests the appellate court of jurisdiction and prevents it from further considering any issues relating to the case.

¶8 However, additional case law from our supreme court suggests that there are at least two circumstances where an appellate court may retain jurisdiction after a case has been remitted to the district court. First, if a remittitur is premature, it cannot effectively return jurisdiction to the lower court. *See Hi-Country Estates Homeowners Ass'n v. Foothills Water Co.*, 942 P.2d 305, 306–07 (Utah 1996) (per curiam) (determining that a remittitur issued before a pending petition for certiorari was resolved did not serve to divest the Utah Court of Appeals of jurisdiction). Second, even after a remittitur returns jurisdiction to the lower court, the appellate court may retain limited jurisdiction over certain matters, particularly where constitutional rights are implicated. *See State v. Lara*, 2005 UT 70, ¶ 21, 124 P.3d 243 (holding that the Utah Court of Appeals had jurisdiction to consider the voluntariness of a defendant's withdrawal of his appeal despite having remitted the case to the trial court).

A. Premature Remittitur

¶9 First, a remittitur cannot serve to return jurisdiction to a lower court for implementation of the appellate court's mandate while the case is still pending on appeal. *See Hi-Country*, 942 P.2d at 306. Our rules of appellate procedure outline a schedule for remittitur that implements this principle. Specifically, the rules instruct the court of appeals to remit a case "immediately after the expiration of the time for filing a petition for writ of certiorari" and to stay the remittitur if such a petition is filed. *See* Utah R. App. P. 36(a)(2). The rules similarly instruct the supreme court to issue remittitur "15 days after the entry of the judgment" or, "[i]f a petition for rehearing is timely filed, . . . five days after the entry of the order disposing of the petition." *Id.* R. 36(a)(1). *See generally id.* R. 35(a) ("A petition for rehearing may be filed with the clerk within 14 days after the entry of the decision of the court, unless the time is shortened or enlarged by order."). If a case is remitted before the time for such petitions has passed

or before the petitions can be considered, jurisdiction will nevertheless remain with the appellate court and not return to the lower court. *See Hi-Country*, 942 P.2d at 306–07 (holding that the trial court did not have jurisdiction to implement the mandate of the court of appeals while a petition for certiorari was pending in the supreme court, despite the fact that the court of appeals had remitted the case to the trial court).

B. Limited Retained Jurisdiction

¶10    Furthermore, there are circumstances where an appellate court may retain limited jurisdiction, despite the lower court having regained jurisdiction as a result of a remand. Our supreme court has rejected the idea "that jurisdiction is a zero sum game—that the acquisition of jurisdiction by one court must be matched by a jurisdictional loss by another." *Lara*, 2005 UT 70, ¶ 16. In illustration of this point, the court pointed out "that trial courts retain limited jurisdiction after a notice of appeal has been filed." *Id.* ¶ 18 (citing *White v. State*, 795 P.2d 648, 650 (Utah 1990) (per curiam) (explaining that despite "the general rule that the trial court is divested of jurisdiction over a case while it is under advisement on appeal," the trial court may be permitted to continue making rulings in a case while it is pending on appeal, "where any action by the trial court is not likely to modify a party's rights with respect to the issues raised on appeal")). Remittitur plays an important role in preventing "different versions of the same judgment [from] being analyzed simultaneously at [multiple] levels of court," *Hi-Country*, 942 P.2d at 307, and in "provid[ing] a clear indication that the trial court has regained jurisdiction to take action consistent with the mandate [of the appellate court]," *Lara*, 2005 UT 70, ¶ 13; *see also Chase Manhattan Bank v. Principal Funding Corp.*, 2004 UT 9, ¶ 9, 89 P.3d 109 (defining "remittitur" as "a formal revesting of jurisdiction with the trial court after appellate proceedings"). Thus, "an appellate court is without power to recall a mandate for the purpose of reexamining the cause on the merits, or to correct judicial error." *Lara*, 2005 UT 70, ¶ 19 (internal quotation marks omitted).

¶11    However, because "remittitur is a procedure created pursuant to the rule making authority vested in [the supreme court]," *see id.* ¶ 13; *see also* Utah R. App. P. 36, its jurisdictional effect is judicially, rather than constitutionally, imposed, *see Lara*, 2005 UT 70, ¶¶ 12–13 (internal quotation marks omitted). Accordingly, "the significance of remittitur as a limitation on . . . jurisdiction" should not be overinflated. *Id.* ¶ 9. "[T]he appellate court retains [at least] the jurisdiction necessary to compel compliance with the terms of the remittitur." *Id.* ¶ 16. Additionally, the jurisdictional implications of

remittitur "cannot be interpreted in a manner that would stymie a legitimate quest to assert important constitutional guarantees," *id.* ¶ 19, which "override . . . whatever jurisdictional significance might reside within . . . jurisprudence relating to remittiturs," *id.* ¶¶ 21–22 (holding that because the constitutional right to an appeal overrides any jurisdictional effect of the rules of appellate procedure, the court of appeals had the authority to exercise jurisdiction over an appellant's claim that he had not knowingly and voluntarily waived his right to an appeal by withdrawing it, even after the case had been remitted).

¶12    Thus, had Falkner identified a constitutional right or other appropriate claim, the district court could have exercised jurisdiction over the motion to reinstate, even if it had properly returned jurisdiction to the justice court. *Cf. id.* ¶ 21. No such claim was raised. However, because the district court remanded the case immediately, without allowing any time for filing of postjudgment motions, remittitur was premature and could not have immediately divested the district court of jurisdiction. Thus, the ultimate question of whether the district court had jurisdiction over Falkner's motion to reinstate turns on whether the motion was filed prior to the time that jurisdiction could properly have been surrendered by the district court.

### III. The District Court Must Retain Jurisdiction over Appeals from Justice Court for a Reasonable Time Sufficient to Permit Consideration of Postjudgment Matters.

¶13    Unlike the Utah Rules of Appellate Procedure, the Utah Rules of Criminal Procedure do not provide clear guidelines regarding the district court's retention of jurisdiction following a remand for abandonment. Although section 78A-7-118(8) of the Utah Code provides that "[t]he district court shall retain jurisdiction over the case on trial de novo," *see* Utah Code Ann. § 78A-7-118(8) (Supp. 2012), the provision in the Utah Rules of Criminal Procedure which permits remand to the justice court in the case of abandonment, *see* Utah R. Crim. P. 38(h), suggests that jurisdiction must eventually return to the justice court after an appeal has been abandoned. Nevertheless, a remand under such circumstances must allow at least some time for parties to file appropriate postjudgment motions before the district court loses jurisdiction.

¶14    Judge Lindberg argues that we should look to the Utah Rules of Appellate Procedure as a guide in determining the appropriate deadline for returning jurisdiction to the justice court after an appeal is remanded for abandonment. Under rule 36 of the

Utah Rules of Appellate Procedure, the court of appeals is expected to issue a remittitur "immediately after the expiration of the time for filing a petition for writ of certiorari," Utah R. App. P. 36(a)(2), and a "petition for a writ of certiorari must be filed with the Clerk of the Supreme Court within 30 days after the entry of the final decision by the Court of Appeals," *id.* R. 48(a). Thus, jurisdiction may be appropriately returned to the district court following appeal thirty-one days after the court of appeals makes its final decision. Judge Lindberg asserts that, likewise, the district court's "jurisdiction is lost no later than 31 days after the dismissal decision is made."

¶15    We agree that the Utah Rules of Appellate Procedure may "serve as a model in the context of justice court appeals." *Cf. Gordon v. Maughan*, 2009 UT App 25, ¶ 22 n.7, 204 P.3d 189 (suggesting that rule 23A of the Utah Rules of Appellate Procedure might serve as a guide for determining whether reinstatement of an appeal from justice court might be appropriate). However, the time for remittitur outlined in rule 36 is not an arbitrary number of days but is based on the time allowed for filing petitions for certiorari and rehearing. Indeed, the supreme court is directed to remit a case a mere fifteen days after a final decision, consistent with the fourteen-day period allotted for filing a petition for rehearing. *See* Utah R. App. P. 36(a)(1); *see also id.* R. 35(a). Thus, the guidance provided by rule 36 is not a strict deadline for returning jurisdiction to a lower court but, rather, a method for determining the appropriate deadline in light of the circumstances. That method requires that the court retain jurisdiction for a period sufficient to allow appropriate postjudgment motions to be filed and considered.

¶16    While the rules provide limited guidance in determining which precise postjudgment motions might be appropriate in the context of an appeal from justice court, it is clear that some postjudgment consideration must be appropriate. In particular, given that "a justice court defendant is in a similar position to a defendant appealing from a district court conviction in the first instance," and his appeal is thus subject to dismissal, unlike a defendant being originally tried in district court, *see Gordon*, 2009 UT App 25, ¶ 16 (emphasis and internal quotation marks omitted), it stands to reason that there should be some procedure for such a defendant to obtain reinstatement of his appeal, *see id.* ¶ 22 n.7 (suggesting that reinstatement of an appeal from justice court after the appeal is remanded for abandonment may be appropriate where the party provides justification for his or her absence in accordance with rule 23A of the Utah Rules of Appellate Procedure). *Cf.* Utah R. App. P. 23A (allowing for consideration of a motion to reinstate an appeal "made within a reasonable time after

entry of the order of dismissal"). Therefore, the district court must retain jurisdiction for a reasonable time sufficient to allow any postjudgment petitions that may be appropriate under the circumstances to be filed and considered.[3]

¶17    Here, the district court declined to exercise jurisdiction based on the fact that it had already remanded the case and that the motion to reinstate was filed more than thirty days after the case was remanded. Because the district court neither loses jurisdiction immediately upon remand nor necessarily loses jurisdiction after thirty days, the district court's reasoning for not exercising jurisdiction is flawed. Nevertheless, we are not convinced that it would necessarily have been an abuse of the district court's discretion to determine that, under the facts and circumstances of this case, the motion to reinstate, filed thirty-five days after remand, was not filed within a reasonable time.

¶18    What constitutes "a reasonable time depends upon the facts of each case, considering such factors as the interest in finality, the reason for the delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Menzies v. Galetka*, 2006 UT 81, ¶ 65, 150 P.3d 480 (internal quotation marks omitted). "In general, the moving party satisfies the reasonable time requirement if [he] shows that [he] acted diligently once the basis for relief became available, and that the delay in seeking relief did not cause undue hardship to the opposing party." *Id.* (internal quotation marks omitted). Because such a determination is so fact-dependent, the district court must be afforded a measure of discretion in determining whether Falkner's motion was filed within a reasonable time. *Cf. id.* ¶¶ 54, 64–69 (reviewing a trial court's ruling on a rule 60(b) motion, including its evaluation of timeliness, for an abuse of discretion). Therefore, we find it necessary to remand this case to the district court for a determination of whether Falkner's motion was timely filed under the circumstances and thus within the jurisdiction of the district court despite the remand.

---

[3]We recognize that such a rule may result in some uncertainty regarding jurisdiction. However, given that the current rules give no guidance as to what a befitting time for filing postjudgment motions might be, we do not consider it appropriate for us to outline a deadline for filing such motions. Additional rules regarding remand following an appeal from justice court, comparable to rule 36 of the Utah Rules of Appellate Procedure, may go a long way toward clearing up this uncertainty.

IV. The District Court Exceeded Its Discretion When It Denied the Motion to Reinstate Without Conducting an Analysis Under Rule 23A of the Utah Rules of Appellate Procedure.

¶19    We also reject the district court's alternative ground for denying the motion to reinstate, namely, that Falkner offered no excuse for his failure to appear. Because we determine that Falkner did offer an explanation for his failure to appear, we determine that the district court exceeded its discretion by denying the motion to reinstate without considering whether Falkner's failure was excusable under rule 23A of the Utah Rules of Appellate Procedure.

¶20    In *Gordon v. Maughan*, 2009 UT App 25, 204 P.3d 189, this court upheld a district court's denial of a motion to reinstate an appeal from justice court remanded for abandonment, in part based on the fact that the defendant "provided no reasons justifying her failure to appear." *Id.* ¶ 22. In so doing, we explained that the criteria outlined by rule 23A of the Utah Rules of Appellate Procedure for determining whether reinstatement of an appeal is appropriate "could serve as a model in the context of justice court appeals." *See id.* ¶ 22 n.7. Rule 23A provides that "[a]n appeal dismissed for failure to take a step other than the timely filing of a notice of appeal may be reinstated by the court upon motion of the appellant for (a) mistake, inadvertence, surprise, or excusable neglect or (b) fraud, misrepresentation, or misconduct of an adverse party." Utah R. App. P. 23A.

¶21    Here, the district court based its denial of the motion to reinstate on its determination that no justification was provided for Falkner's failure to appear, only his counsel's failure to appear. Judge Lindberg reasserts this position in her response to Falkner's petition for extraordinary relief, alleging that there was no notation in the docket explaining that Falkner himself would be late and asserting that the motion to reinstate "did not provide a detailed explanation about why the defendant failed to appear" on time. However, even assuming that a failure to explain Falkner's absence would preclude the reinstatement of the appeal on grounds of "mistake, inadvertence, surprise, or excusable neglect,"[4] *see* Utah R. App. P. 23A, we do not agree with Judge

---

[4]Falkner asserts that in light of the fact that his attorney gave the court prior

(continued...)

Lindberg that Falkner's absence was unexplained. Falkner's motion to reinstate referred to and included as an exhibit a copy of a notice of court date his attorney provided to him, which instructed him to appear for the pretrial conference between 10:00 and 10:30.[5] And the subsequent motion to reconsider the motion to reinstate clearly explained that counsel had "instructed [Falkner] to arrive for the July 12 hearing when he (counsel) expected to arrive himself: at 10:00 a.m." Given this evidence that Falkner was misinformed by his counsel about when he was expected to appear for the pretrial conference, the district court should have considered whether reinstatement was appropriate under rule 23A rather than summarily denying the motion based solely on Falkner's failure to appear.

CONCLUSION

¶22    We determine that the district court did not lose jurisdiction immediately upon remand to the justice court and did not necessarily lack jurisdiction to consider Falkner's motion to reinstate filed thirty-five days after his case was remanded for abandonment. We also determine that the motion to reinstate could not be summarily denied based on Falkner's failure to appear on time for the pretrial conference. We therefore grant his petition for extraordinary relief and direct the district court to determine whether the motion to reinstate was filed within a reasonable time so as to give the district court jurisdiction to consider the motion and, if so, whether

---

[4](...continued)
notice that he would be late, "[a]t the very least, the District Court should have sought some confirmation from the Defendant regarding its unwarranted assumption of abandonment." We agree with Falkner that the fact that the court had some notice of a scheduling conflict could make Falkner's failure to appear sufficiently excusable under the circumstances to justify reinstatement of the appeal, despite the fact that the district court was not given actual notice that Falkner did not plan to arrive until his attorney did.

[5]We acknowledge that the significance of this note was not fully discussed in the motion to reinstate and may have easily been overlooked by the district court. However, this does not explain the subsequent denial of the motion to reconsider, which was also summarily denied.

reinstatement is appropriate under the standard outlined by rule 23A of the Utah Rules of Appellate Procedure.

_____

James Z. Davis, Judge

-----

¶23     WE CONCUR:

_____

J. Frederic Voros Jr., Judge

_____

Michele M. Christiansen, Judge